## PLEASANT H. PEARSON v. JAMES W. FLANAGAN.

1. PRACTICE IN SUPREME COURT—ASSIGNMENT OF ERROR.—An assignment of errors in the following terms, viz., "The court erred in refusing the defendant a new trial for the reasons given in said motion," or, "The court erred in not giving the several special charges to the jury asked by the defendant," is not such a distinct specification of the grounds of error relied on as is contemplated by the statute and required by rule 34 of the Supreme Court.

2. RULES OF COURT—PRACTICE.—The rules of court discussed, and the fact announced, that an examination of the record, to ascertain what was intended to be reached by a general assignment of errors, often required more time than did the decision of the points involved, after they had been discovered. The rules of court were, among other things, intended to relieve the Supreme Court only of unnecessary labor, thus enabling the court to decide a greater number of causes during a term, and to relieve the crowded condition of the docket.

3. ASSIGNMENT OF ERRORS.—Each error assigned should contain a distinct ground for the reversal of the judgment, with the specification of the reason why it should be reversed, and should be copied or substantially stated in the briefs.

4. EVIDENCE.—When defendant denies possession and claims title to the land in controversy from the plaintiff by a sale under an execution against him, it is not error to overrule the objection of defendant to the validity of the title down to plaintiff.

5. SAME.—When gross inadequacy of price is relied on to avoid a sheriff's deed to land, it is not error to exclude evidence of the litigious character of the judgment debtor, offered as explaining the small amount bid.

6. LEVY—STATUTE CONSTRUED.—The statute (Paschal's Dig., art. 3775) which provides how a levy should be made when the defendant in execution fails or refuses to point out property, is directory. Though the failure to make the levy as required by statute might be sufficient in a proper case, properly presented, to set aside the levy, or to make the officer liable in damages, the sale would not necessarily be void.

7. SHERIFF'S SALE—INADEQUACY OF PRICE.—Inadequacy of price will not, of itself, authorize the setting aside of a sheriff's sale otherwise valid, but gross inadequacy of price, in connection with slight additional circumstances showing fraud, irregularity, or facts calculated to prevent the property from bringing something like its reasonable value, may avoid the sale.

8. SAME.—What circumstances, in connection with inadequacy of price, will avoid a sheriff's sale, must depend on the facts of each particular

case; but they must not be such as are attributable to the direct agency of the defendant in execution.

9. FACT CASE—SHERIFF'S SALE—CHARGE OF COURT.—See case for facts which required the court to submit to the jury the question as to whether the grossly inadequate price paid for land at a sheriff's sale might not have been occasioned by the acts and omissions of the defendant in execution.

APPEAL from Rusk. Tried below before the Hon. A. J. Booty.

On the 23d of January, 1877, appellee, James W. Flanagan, brought suit in the District Court of Rusk county against the appellant, Pleasant H. Pearson, in trespass to try title for the Ezekiel Norris survey of six hundred and forty acres of land in Rusk county, and, in addition, petitioned the court to cancel a deed·to appellant for some land from the sheriff of Rusk county for fraud and inadequacy of price.

On the 20th of January, 1879, appellee filed an amended original petition, alleging, in substance, that appellant owned and was in possession of six hundred and forty acres of land in Rusk county known as the Ezekiel Norris survey, giving the boundaries; that on the 1st of November, 1876, appellant entered upon and ejected him from said land, and had kept him dispossessed; and that the annual value of the rent was $300. He prayed for judgment and possession. He also averred that appellant claimed said land under a sheriff's deed dated 7th of March, 1871, and sale under execution issued by the clerk of the District Court of Rusk county on 19th of January, 1871, on a judgment in favor of appellant against appellee for $1,000; that the *fieri facias* was levied on the land on the 20th of January, 1871, by the sheriff of Rusk county, who made no return on the *fieri facias* of the disposition he had made of the land; that after the sheriff had gone out of office S. R. Whitley, who purported to act as the sheriff, without authority of the court, pasted on the *fieri facias* a paper on which he made return of the sale, giving no date to the paper; that appellant caused the *fieri facias* to be levied on said land, worth

at the time $4,000, and at the same time levied on the following lots and tracts of land, viz.: A lot in Henderson, number 56, block 28, worth at the time $1,000; a tract of land in Henderson, twelve and seven-eighths acres, worth $1,000; and a tract of land described as the Loller survey, worth at the time $500. That the sheriff sold all the lands in a mass, and conveyed them in the same manner to appellant for the sum of $77.60; that this was done under the fraudulent promptings of appellant; that the gross inadequacy of the price for which the lands sold and the fraudulent and irregular manner of sale avoid the sale in law; that said appellant, to carry out his plan to obtain appellee's land without adequate consideration, caused said *fieri facias* to be levied without calling on appellee, or his agent, Webster Flanagan, who was at the time residing in Rusk county, but, taking advantage of his continued and necessary absence at Washington, D. C., as a Senator in Congress, caused said *fieri facias* to be levied on said lands, and had the same sold, when at the same time it was well known to said appellant and said sheriff that appellee had in his possession in Rusk county, where he resided at the time, visible and perfectly accessible to levy by said sheriff, a large amount of personal property,—38 bales cotton, of the value at the time of $3,000, and 200,000 feet of sawed lumber, of the value at the time of $3,000, besides wild lands in Rusk county of the value of $30,000; that while said sheriff had said *fieri facias* for execution, and before his levy on the said lands, he was distinctly informed that appellee had the said personal property, and said sheriff declined to levy on the same, but levied on the property of Webster Flanagan, who was the surety of appellee in said judgment of Pearson *v.* J. W. Flanagan, and forced Webster Flanagan to enjoin the sale thereof; that appellant, the more effectually to carry out his fraudulent intent to appropriate the lands of appellee, pointed out and caused said sheriff to disregard the law and pass over said personal property and wild lands of appellee and levy on the said Norris land, which was improved land, and this was all done

by said appellant to obtain appellee's lands for a nominal price; that the said sum of $77.60 bid by said appellant for said land was entered as a credit on said judgment; that he paid no money on said bid at said sale; that appellee brings the said $77.60 so bid by appellant for said land into court to be refunded to said appellant on the cancellation of said sheriff's deed to said appellant for said lands; that on the 6th of January, 1875, appellee fully paid the said judgment of said appellant against appellee, on which said *fieri facias* issued, under which said lands were sold, and then and there offered to pay back to said appellant the said $77.60 so bid and credited on said judgment, with the interest thereon, which offer was refused by said appellant.

The petition then set out appellee's title, viz.: Deed from Ezekiel Norris dated 2d of February, 1849, to Allen Norris, which was duly acknowledged for record and recorded on the 25th of May, 1849, by James McWilliams, clerk of the County Court of Rusk county; that Allen Norris, under said deed, took possession of said land, and held actual, peaceable, continuous, and adverse possession of the same until the 1st of January, 1871; that on the 8th day of November, 1870, Allen Norris and his wife sold and conveyed said land to appellee, and that said deed was on that day acknowledged for record and recorded in the county clerk's office of Rusk county on the 16th of May, 1874. The petition then sets out the field-notes of survey of said land, made for Ezekiel Norris by virtue of his own headright certificate for six hundred and forty acres of land, issued by the board of land commissioners of Rusk county; survey made August 21, 1847.

January 21, 1879, appellee filed trial amendment, and amended his amended original petition, filed January 20, 1879, by tendering in open court to appellant $77.60, and the interest thereon from the 7th of March, 1871, the date of appellant's purchase of the land sued for, &c. Martin Casey intervened and claimed one hundred acres of the land, for

which he obtained judgment. His interest was not involved in the appeal.

Mrs. E. H. Flanagan also intervened, claiming all the land. She was defeated, and her interest was not involved in the appeal.

March 14, 1877, appellant answered by general demurrer, and specially, that more than five years had elapsed from the date of sheriff's sale under which he claimed to the bringing of appellee's suit to set aside that sale, which lapse of time deprived appellee of his right to set the sale aside. He also pleaded not guilty, a general denial, and the statute of limitations of three years under color of title and under title, and five years under recorded deed, &c.; that the sheriff's sale was honest and fair, and that the land was sold in lots of not more than forty acres at a time.

January 20, 1879, appellant filed second supplemental answer, in substance, that there was no fraud in the sheriff's sale under which he claimed the land; that there was no title of record to plaintiff; that the character of appellee for litigation was notorious, and also that his character for dealing in land with doubtful title was notorious, and for these reasons the land sold for an inadequate price.

Judgment was rendered in favor of James W. Flanagan, and against his wife and Pearson.

It was agreed by the parties that in the years 1870, 1871, and 1872 A. F. Lacy was deputy sheriff of Rusk county; that he would testify, if present, that as deputy sheriff "he had an execution in favor of Pearson against James W. Flanagan; that before the sale of the land sued for he called on J. W. Flanagan for a levy to satisfy said execution, which issued on the judgment under which the land was sold, and he declined to give any, or to point out any property to levy said execution on, stating that he had paid the same by his bankruptcy; that said execution was for about $1,000."

James W. Flanagan went into bankruptcy in 1868. He

claimed that the Pearson judgment had been discharged by his bankruptcy.

When the levy was made J. W. Flanagan was Senator at Washington, D. C., and Webster Flanagan was Senator at Austin, Texas.

N. G. Bagley, Pearson's attorney, in a month or two after he purchased the land for Pearson, made an agreement with one Satiwhite to go into possession of the land for the year 1871.

Witness McAfee saw Satiwhite in possession of the land, who told witness that he held the land for N. G. Bagley. He left there in the fall of 1871, and one Ames went into possession as tenant to N. G. Bagley, and remained there for five years as such tenant.

Witness Mayers, as agent for plaintiff, leased the land to Ames on December 20, 1874, and leased the same land to Scott Bryant for 1876, who was dispossessed, at the suit of defendant before a justice of the peace, in the winter.

The court, among other things, charged: "It was the duty of said sheriff to have levied said execution, first, on the personal property of the plaintiff, if any he had, and the said sheriff had knowledge of the same, or by reasonable and ordinary inquiry and diligence might have learned of the existence of the same."

And, further, the charge directs: "But you are further instructed, that if the said land sold at said sale for a price which was shockingly and unconscientiously less than its value, that is, if it sold for a price so far beneath its value that no man in his senses would have exchanged it for such a price; and if you further believe from the evidence that the plaintiff had in Rusk county personal property and improved lands, either or both, sufficient to have satisfied said execution, and the officer levying said writ had knowledge that he had the same, or by ordinary inquiry might have learned of his having the same, then his failure to levy said execution upon and sell said personal property and unimproved real estate, either or

both together, with the fact (if such be the fact, of which you are the judges) that said land sold for a price so shockingly and unconscientiously below its value that no man in his senses would have sold it for such a price, those circumstances would be sufficient to set aside the sale."

Pearson moved for a new trial, alleging—

1st. The jury found contrary to the law and the evidence. There was no evidence that the plaintiff was in Rusk county, or had any agent there to point out property to be levied on, or that the plaintiff had any personal property subject to levy when the levy was made.

2d. The court erred in refusing to give each of the special charges asked by the defendant.

3d. The court erred in allowing the deed from Ezekiel Norris to Allen Norris to be read in evidence without proof of its execution, and because it was not a properly recorded instrument, having no official seal.

4th. The court erred in allowing the copy of the certificate to be read as evidence. It was not issued as required by law, not having the certificate and seal of the clerk of the County Court.

5th. The court erred in those portions of the charge relating to the sheriff's duty to use diligence to find personal property or unimproved lands, and relating to great inadequacy of price.

Appellant assigned errors—

1st. In that part of the charge stating the duty of the sheriff to levy on personal property or unimproved lands, if by ordinary diligence he could find such, without the qualification that it must be presumed that the sheriff had done his duty until the contrary appears.

2d. In that part of the charge relating to the price paid for the land.

3d. In admitting as evidence the certificate for land to Ezekiel Norris, because it did not show that it had been certified under the hand and seal of the clerk who issued it.

4th. In overruling defendant's objections to the deed from

Ezekiel Norris to Allen Norris, because the same was not proven up as required by law. The county clerk did not certify the fact of its acknowledgment and proof of the signature of Ezekiel Norris under his hand and seal of office, there being no impress of a seal visible on the deed.

5th. In excluding the testimony of N. G. Bagley stating what Wade Turner said at the sheriff's sale, that he (Turner) " would not buy anything belonging to Flanagan, as he would litigate for the land for the balance of his life."

6th. In sustaining objections of plaintiff to the evidence of several witnesses offered by defendant to show that plaintiff was very litigious, and was in the habit of litigating everything with which he was concerned.

7th. In refusing the defendant a new trial for the reasons stated in his motion for that purpose.

8th. In refusing to give the jury the special charges asked by defendant.

*Martin Casey*, for appellant.

I. One may waive any privilege or right granted or secured to him. ( Bouv. Dic., title WAIVER; Freem. on Ex., sec. 279.) Flanagan refused to give a levy or point out property to Sheriff Lacy when demanded, having then an execution in favor of Pearson, stating that the Pearson judgment had been discharged by his bankruptcy.

The portions of the charge referred to in these two assignments were sought to be qualified and modified by a special charge asked and refused, in which the court is asked to charge, that if the plaintiff had been called on for a levy, and failed or declined to give any; that if execution on the judgment had been returned "no property found"; that the defendant was not in the county, and had no known agent there when the levy was made; that he had no evidence of record of his owning any wild lands, and failed to prove that the sheriff knew he owned any such or personal property to satisfy the execution, they must not set the sale aside.

II. Where the defendant in execution is not in the county, and had no known agent there when the levy was made, he cannot complain that he had no opportunity to point out property, unless he tender property before or on the day of sale sufficient to bring the amount of the judgment; and it will be presumed that the sheriff used ordinary diligence unless the contrary be shown. (Ross *v.* Lister, 14 Tex., 473; Kendrick *v.* Rice, 16 Tex., 260; Cook *v.* De La Garza, 13 Tex., 431.)

III. Neither inadequacy of price alone nor irregularities, unless caused by plaintiff in execution, will set aside a sheriff's sale when fairly made; and the acts and character of defendant in execution, and the circumstances attending the title, may be considered to account for the smallness of the price bid for the land. (Pridgen *v.* Adkins, 25 Tex., 388; Baker *v.* Clepper, 26 Tex., 634; Moore *v.* Lowery, 27 Tex., 542; Riddle *v.* Bush, 27 Tex., 677; Howard *v.* North, 5 Tex., 306; Sydnor *v.* Roberts, 13 Tex., 598.)

IV. On inspection of the deed from Ezekiel Norris to Allen Norris, by this court, it will appear that it has no official seal to the certificate of acknowledgment, and is not a properly recorded instrument. (Paschal's Dig., art. 5007.)

V. The main drift of the plaintiff's petition is, that the sale of the land was fraudulent, mainly on the ground of gross inadequacy of price. Any evidence which shows the inadequacy to arise from the acts and character of the plaintiff, is proper.

The *res gestæ* may be always given in evidence. (1 Greenl. on Ev., sec. 108.) The declarations of Turner were made at and during the sale.

Men are reluctant to pay a fair price for what will be litigated. It was proposed to prove that the plaintiff's character for litigation was notorious.

When the evidence offered corresponds with the allegations, or rebuts them, it is relevant, and ought to be admitted. (1 Greenl. on Ev., sec. 51.)

VI. Defendant asked the court to charge the jury, that "if

he went into possession of the land under the sheriff's deed duly recorded, and remained in actual, adverse, peaceable possession for three years, having purchased the plaintiff's title, who claimed from the sovereignty of the soil, or if he had like possession for five years under said deed, and the plaintiff brought no suit during that time to set aside said sheriff's sale, and showed no sufficient excuse for the delay, they will find for the defendant." The court refused this charge.

The plea of limitation is a good bar.

Application to set aside a sheriff's sale must be made in a reasonable time, and particularly before the bar of the statute of limitations. (Rorer on Jud. Sales, sec. 1080; Conolly *v.* Hammond, 51 Tex., 635.)

*James H. Jones* and *W. W. Morris,* for appellee.

I. If, at a sheriff's sale, land sells for a price utterly insignificant and shockingly disproportionate to its value, and there are but slight irregularities or other circumstances attending the sale calculated to prevent the property from bringing something like its reasonable value, an attempt by the purchaser (particularly if he is the plaintiff in execution, and credits his bid on the execution and pays no money, and contributes to the failure of the land to sell for a fair price) to hold the property will be held to be conclusive evidence of fraud. (Taul *v.* Wright, 45 Tex., 394; Chamblee *v.* Tarbox, 27 Tex., 145; Paschal's Dig., art. 3775; Bryan *v.* Bridge, 6 Tex., 142; Howard *v.* North, 5 Tex., 315; Coffee *v.* Silvan, 15 Tex., 358; Rorer on Jud. Sales, sec. 855 and cases in note 5, sec. 862 and note 2.)

II. If a defendant in execution is not in the county, and has no agent known to the sheriff in the county, yet the sheriff who has an execution that he has never called on the defendant for a levy to satisfy, if he know of personal property or wild lands, or if he may find personal property or wild lands, in the county, subject to levy, by using the ordinary means to ascertain the fact, is not warranted by the law to levy on im-

proved lands, at the instance of plaintiff in execution, which are in value greatly in excess of the amount of the judgment, and sell them to the plaintiff in execution for a price grossly inadequate; and such sale will be set aside. (Paschal's Dig., art. 3775; 6 Tex., 142.)

BONNER, ASSOCIATE JUSTICE.—This is a suit brought by appellee, James W. Flanagan, against appellant, Pleasant H. Pearson, to recover the Ezekiel Norris six hundred and forty acres of land, and is also in the nature of an equitable proceeding on the part of James W. Flanagan, as defendant in execution, to set aside the execution sale of this land, at which Pearson, plaintiff in execution, was the purchaser.

Two of the most important questions presented by the pleadings of appellant, Pearson, defendant below, (that of the statute of limitations and that of the laches on the part of appellee, Flanagan, to institute within the proper time proceedings to set aside the execution sale,) are not so presented under the rules of this court as to demand that we pass upon them.

Although set up in the pleadings, and though there was testimony tending to prove these issues, the learned judge presiding below failed to submit them in his charge. Appellant asked ten special charges, all of which were refused. Several of these were lengthy, and some of them, in the attitude of the case as now before us, might not be insisted upon. One of these presented the above issues, which had been pretermitted in the general charge.

The failure to submit them was also, in general terms, made one of the eleven grounds in the original and two amended motions for a new trial.

The ninth and tenth errors assigned are, that "the court erred in refusing the defendant a new trial for the reasons given in said motion," and that "the court erred in not giving the several special charges to the jury asked by the defendant."

Rule 24 of the Supreme Court provides: "The assignment of errors must distinctly specify the grounds of error relied on,

and a ground of error not distinctly specified, in reference to that which is shown in the record, or not specified at all, shall be considered as waived, unless it be so fundamental as that the court would act upon it without an assignment of errors, as mentioned in rule 23." (Paschal's Dig., arts. 1591.)

Rule 26 provides: "Assignments of error which are expressed only in such general terms, as, that the court erred in its rulings upon the pleadings, when there are more than one; or in its charge, when there are a number of charges; or the verdict is contrary to law, or to the charge of the court, and the like, without referring to and identifying the proceeding, will not be regarded by the court as a compliance with the statute, requiring the grounds to be distinctly specified, and will be considered as a waiver of errors, the same as if no assignment of errors had been attempted to be filed."

One of the principal objects sought to be accomplished by the rules, was, as far as practicable, to conform our mixed practice of law and equity to the simplicity of the common-law system of pleadings and procedure.

To effect this in the Supreme Court, it was intended that all alleged errors, (many of which are often necessarily taken without due consideration in the heat and haste of the trial below,) if not assigned with the requisite certainty, should be considered as waived, and that the parties should in their briefs be required to join issue upon alleged errors only which are properly assigned.

To this end, the appellant is required to so specifically assign his errors, and to make in connection with each error assigned a substantial statement from the record of the facts bearing upon the same, those against as well as those for him, with a reference to pages of the transcript where they may be found and of the authorities relied upon, that the appellee may be advised of the particular matter complained of, so that he can take issue upon the same; or, in the nature of a plea in confession and avoidance, may on his part admit and seek to avoid the issues thus tendered him, by submitting counter-issues, sup-

ported by a statement from the record, made with the same particularity as is required of the appellant. (Rule 25.)

In this way the court is advised of the particular points in issue, and can readily pass upon them without the delay of an examination of the record, except when the parties disagree in their briefs as to its contents.

This examination, under the old system, often required more time than did the decision of the points involved, after they had been ascertained.

The rules, in these particulars, were intended both to aid counsel in the proper presentation of the real questions in issue, as they, having tried the case below, are presumed to be best prepared to know and present them, and also to aid the court in the dispatch of business; and it is believed that, if understood and practiced, they will, in a great majority of cases, be of great advantage both to counsel and to the court. They are not intended to relieve the court of the proper amount of labor which they should perform, but to so systematize and concentrate this labor that many more cases can be decided in the same length of time, and thus the crowded dockets of the court be relieved. The practical working of the system, when it has been fairly tested, gives evidence of this beneficial result.

If, however, as in this case, where several special charges were asked, or several special grounds in a motion for a new trial presented, and it is sought to reverse the judgment because the court refused to give the charges or grant the new trial, and the assignment groups these charges or grounds for a new trial together, and is so general that it does not particularly point out the one here relied upon for reversal and its application shown to the facts, then, if entertained, the opposing counsel and the court are required to consider them all, and thus the beneficial results intended by the rules will, in this particular, be defeated. (Fisk *v.* Wilson, 15 Tex., 435.)

Each error assigned should contain a distinct ground for the reversal of the judgment, with the specification of the reason

why it should be reversed, and should be copied or substantially stated in the briefs.

As it appears from both the pleadings and the evidence that appellant, Pearson, derived his possession and title to the land in controversy from the appellee, Flanagan, by the sale under the execution against him, it was not error to overrule the objections of appellant to the validity of the title down to appellee.

The courts are open to every citizen for the lawful prosecution or defense of suits which may be brought by or against him. If it should be his misfortune, from choice or from compulsion, to have been often before the court as a litigant, his general character in this regard should not, of itself, prejudice his right to have his property sold at a fair price, and we do not think that the court erred in excluding evidence of the litigious character of appellee.

It is assigned as error, that the court erred in that part of the charge in which the jury were instructed as follows:

"And it was the duty of said sheriff to have levied said execution, first, on the personal property of the plaintiff, if any he had, and the said sheriff had knowledge of the same, or by reasonable and ordinary diligence and inquiry might have learned of the existence of the same." *  *  *  "But you are further instructed, that if said land sold at said sale for a price which was shockingly and unconscientiously less than its value, that is, if it sold for a price so far beneath its value that no man in his senses would have exchanged it for such a price; and if you further believe from the evidence that the plaintiff had in Rusk county personal property and unimproved lands, or both, sufficient to have satisfied said execution, and the officer levying the said writ had knowledge that he had the same, or by ordinary inquiry might have learned of his having the same, then his failure to levy said execution upon and sell said personal property and unimproved real estate, either or both together, with the fact (if such be the fact, of which you are the judges) that said land sold for a price so shockingly and un-

conscientiously below its value that no man in his senses would have sold it for such price, those circumstances would be sufficient to set aside the sale."

Although the reasons growing out of the feudal system which gave a peculiar value to real estate over that of personal property as entitling the owner to certain privileges and dignities, and although the restrictions which impeded its free alienation ceased with the causes which gave them birth, still both the voluntary and involuntary sale of real estate is more guarded and protected than that of personal property. (Freem. on Ex., sec. 279.)

·This policy, and that of encouraging a settled population and the cultivation of the soil as the true sources of individual and national wealth, gave rise to our homestead laws, and doubtless to our statute, which provides that if the defendant in execution shall fail or refuse to point out property, and the same is in the county, the levy shall be made first on personal or movable property, then on uncultivated lands, and lastly on improved lands. (Paschal's Dig., art. 3775.)

Similar provisions in other statutes have, however, been held—and we think correctly—to be merely directory; and though the failure to make the levy as designated might be sufficient in a proper case, and on a proper application, to set aside the levy, or to make the sheriff liable in damages, yet the sale would not necessarily be void. (Freem. on Ex., sec. 279.)

It is the policy of the law, for the benefit of both the debtor and creditor, that judicial sales, when fairly made, should, as a general rule, be upheld. To hold otherwise would have a tendency to deter parties both from purchasing and from paying fair prices, and would lead to the sacrifice of the property.

The weight of authority, including that of this court, is, that mere inadequacy of price, of itself, is not sufficient to set aside a sheriff's sale otherwise valid, but that gross inadequacy of price, in connection with slight additional facts showing fraud, irregularity, or other circumstances calculated to prevent the property from bringing something like its reasonable value,

might avoid the sale. (Freem. on Ex., sec. 309; Allen *v.* Stephanes, 18 Tex., 658; Chamblee *v.* Tarbox, 27 Tex., 139.)

What those additional circumstances are, depends upon the facts of the particular case; but we think it safe to say that they should be such as are not attributable to the direct agency of the defendant in execution. (Freem. on Ex., sec. 309; Law *v.* Smith, 4 Ind., (Por.,) 56.)

In this case the defendant in execution was absent from the State at the time of the levy and sale, and the evidence tends to prove that he had no authorized agent in the county to point out property, although demand had been made of him for a levy on previous executions, on this very judgment, with which he had failed to comply. It further tended to prove that the deed to the land in controversy and the deeds to his uncultivated lands had not been recorded, and also that the sheriff did not have such information as to the last-named lands as to sufficiently designate them for the purposes of a levy.

Although the defendant was not absolutely required to record his titles, yet we think the failure to put them upon the public records, the place where parties would usually search for information in regard to them, would, under the other circumstances in testimony, have a tendency to excuse the defendant from a levy on the wild or uncultivated lands, and might have greatly weakened the confidence of the bidders in the validity of the title to the land sold, and thus affected the price.

The charge complained of virtually instructed the jury that gross inadequacy of price, connected with a failure to levy upon property in the order designated by the statute, would, in law, be sufficient to set aside the sale.

We think, under the circumstances, that the charge was erroneous, and calculated to mislead the jury, in not also submitting to them, in this connection, the question as to whether this grossly inadequate price might not have been occasioned by the acts and omissions of the defendant in execution as shown by the testimony.

For this error the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 9, 1879.]