D. C. and M. L. Roby v. C. L. Carter et al. ·

No. 367.

**1. Contract Illegal as Against Public Policy— Influencing Voters.**—A contract providing that individual voters shall be offered a pecuniary inducement, such as a gift of town lots, to influence their votes in an election for the location of a county seat, is illegal and void both at common law and under our statute.

**2. Same — Donations to Public. —** But a donation of aid in the way of land or money to a State, county, or public body for the purpose of inducing the location of public buildings or of a county seat at a particular place, is not considered as a bribe to voters, or void as against public policy.

**3. Proof of Title in Suit on Contract—Common Source.**—Where the owners of land make a contract in relation thereto, and are sued for the enforcement of the contract, it is not necessary for plaintiff to introduce other evidence of title than the contract itself, as the defendant owners are the common source.

Appeal from Nolan.   Tried below before Hon. William Kennedy.

*Cowan & Fisher, Crane & Keifer,* and *C. R. Breedlove,* for appellants.

The contracts upon which plaintiffs base their cause of action were made upon an illegal consideration, and are contrary to public policy and void, and can not be the basis of recovery in the hands of any one, as said contract contemplates and authorizes an improper and illegal influence upon the voters of Fisher County in the selection of the county seat, and opens the door for bribery and ·fraud in elections for county seats.   The law will not aid in enforcing any contract that is illegal, or. the consideration of which is inconsistent with public policy and sound morality, or the integrity of the domestic, civil, or political institutions of a State.   Clippinger v. Hepbaugh, 40 Am. Dec., 519; Filson v. Hinds,

47 Am. Dec., 422; Hatzfield v. Gulden, 32 Am. Dec., 750; De Leon v. Trevino, 49 Texas, 91; Tool Co. v. Norris, 2 Wall., 45; Sweeney v. McLeod, 15 Ore., 330; Burk v. Child, 21 Wall., 441; Marks v. Railway, 57 U. S., 314.

*Cockrell, Cockrell & Tillett*, for appellees.—A contract between parties to secure the location of a county seat at a particular place is not per se an unlawful contract; and in order to defeat the performance of an agreement based on such a contract as consideration, it is not sufficient merely to show that unlawful means were used to secure such location, but it must also be shown that the use of such unlawful means was intended by the parties at the time of making the contract, and that in fact an unlawful scheme was part of the consideration.    The use of unlawful means in the performance of a lawful agreement does not deprive the party using . such unlawful means of his rights under the contract.    Wald's Poll. on Con., 321–323, 329, 331; Workman v. Campbell, 46 Mo., 305.

HEAD, ASSOCIATE JUSTICE.—Appellants, being the owners of 2000 acres of land, a part of the Thomas H. Cosby league, in Fisher County, on August 10, 1885, entered into a contract in writing with Walton, Hill & Walton, by which they agreed to convey to the latter, '' their heirs, assigns, and legal representatives,'' a one-third interest in said land as soon as the county seat of Fisher County should be located thereon through the acts of said Walton, Hill & Walton, or their agents.

On the 24th day of August, 1885, appellants also gave to said Walton, Hill & Walton a written power of attorney, in which it is recited, that '' whereas, we are the owners in fee of 2000 acres out of the west end of the Thomas H. Cosby league of land, in Fisher County, Texas; and whereas, we have employed the said Walton, Hill & Walton to use their best efforts and endeavors to secure the location of the county site or town of Fisher County on said land, it being in the centre of said county and every way suited for the eligible location of said county town; and whereas, the said county is on the eve of being organized, and said county site or town is about to be located; and whereas, we have contracted with the said Walton, Hill & Walton, and do hereby contract with them, to convey to them by good and sufficient deed, with warranty of title, in and to a one-third undivided interest in said tract of land in the event that they shall succeed in locating or causing to be located thereon the said county town or site;

'' Now be it further known:   1.  That we authorize the said Walton, Hill & Walton to substitute other agents and attorneys for us, at their own cost, charge, and responsibility, to aid them in securing the location of such county site or town on said land, and to revoke the powers they may give.

"2. They are authorized to donate to the county of Fisher all necessary eligible grounds for all public buildings, for at least four churches, three school houses, and one park, the park not to exceed ten acres.

"3. We also authorize them specially to give to any person who may wish to settle in the said town or county site, after it is laid off, which has already been done, not more than twenty-five lots, and these not on the public square, on condition that the donees build houses on the lots given within ninety days from the date of the deed.

"4. And we here now fully authorize and empower them, the said Walton, Hill & Walton, to bargain, sell, and convey, with general covenants of warranty, such lots and portions of said land as are included in the town plat, and on such terms for cash or otherwise as they shall judge to be to our and their own interest, and to receive and receipt for the purchase money thereof, our two-thirds share and interest thereon; and generally they are authorized and empowered to do in and about and concerning said town lots and lands included in the town plat all things that we could do were we present and acting ourselves in person; and we do hereby specially authorize them to substitute other agents and attorneys to make sale of the lots, and to revoke their powers as often and reappoint or appoint others as often as they may see proper or deem it necessary to do, at their own charge, cost, and responsibility."

Walton, Hill & Walton employed appellees to assist them in carrying out the objects contemplated by this contract and power, and agreed to give them two-thirds of the one-third that they were to receive.

It seems that to secure the location of the county seat of Fisher County as contemplated by these instruments, appellees conveyed to individual voters of said county about 600 of the lots shown by the plat of the contemplated town, and through their efforts the election was carried in favor of that place, and this suit was instituted by them to enforce a conveyance by appellants to them of their interest to the land, in accordance with their contract with Walton, Hill & Walton.

To appellees' petition, appellants, after demurring specially upon various grounds, pleaded "that the contracts declared on and made the basis of this action are illegal, contrary to public policy, and void, for they aver and charge that the sole consideration for said contracts was that said Walton, Hill & Walton would secure the location of the county site of Fisher County, Texas, on the land of these defendants described in plaintiffs' petition, which result, defendants aver, could only be accomplished by influencing a majority of the qualified voters of Fisher County to vote for such location; and it was then and there understood and contemplated by the parties to said contracts that said Walton, Hill & Walton should resort to any and all methods known to man to influence such voters, regardless of means; and it was particularly understood and contemplated by said parties that whenever voters could not be in-

duced otherwise to vote for such location, they were to be bribed, if possible, by the gift of a lot or lots in said contemplated town or county site, and in furtherance of said purpose many voters were induced and influenced to vote for the location of said county site on defendants' land, by gifts to them by Walton, Hill & Walton and their agents, plaintiffs, of town lot or lots in said county site, which is the town of Roby, in said county," etc.

In support of these allegations, appellee C. L. Carter, on cross-examination, testified: "I made several hundred deeds to lots in the town of Roby to parties to whom we had donated lots. To some men we only gave one lot, to others we gave more. Sometimes we would give a party ten or fifteen lots, owing to the amount of influence he had. * * * Yes; I know Clabe Walker. He was one of the most influential cowboys. He did us good, and we gave him about fifteen lots. He worked among the boys very hard for us, and secured us lots of votes. Whenever we thought it to our advantage to donate lots we did so. * * * Our object and purpose in donating these lots was to get the parties to vote for Roby and use their influence for it as the county seat. We thought by making them interested in the town they would be more certain to vote for it. Yes; it is a fact that we gave the lots to the voters for the purpose of getting them to vote for and use their influence for Roby as the county seat at the election held for that purpose, and we succeeded in winning the county seat. We did not require or exact a promise from the voter to vote for Roby as the county seat when we gave him a lot, but we thought they would do so in most instances," etc.

Upon this branch of the case the court instructed the jury as follows: "If you find that it was the understanding of Walton, Hill & Walton and the Robys that whenever voters could not be induced otherwise to vote for the location of the county site on the Roby land, they were to be bribed by the gift of a lot or lots in said town or county site, then such contract would be illegal and void, and if you so find, you will return a verdict for defendants; but if there was an understanding that all the voters of said county were to receive a lot or lots, without any reference to whether they should vote in favor of or against the location, then said contract would not be illegal."

In Greenhood on Public Policy, 387, it is said: "Any contract by which the vote of a citizen or public officer, or a nomination to public office, or a candidacy therefor, or a claim upon the people for office, is made the subject of private emolument, or by which the liberty of an elector to vote according to his conscience is restricted, or which contemplates the use of improper influence upon such elector, or is calculated to exercise an injurious influence over the purity of elections in the State or in another State, is void." And by the Criminal Code of this State it is provided as follows:

"Article 145. If any person shall bribe or offer to bribe any elector, for the purpose of influencing his vote at any public election, he shall be punished by fine not exceeding $500.

"Article 146. If any elector shall accept a bribe offered as set forth in the preceding article, he shall be punished in like manner as is provided with respect to the person offering the bribe.

"Article 150. If any person shall furnish money to another, to be used for the purpose of promoting the success or defeat of any particular candidate, or of any particular question submitted to the vote of the people, he shall be punished by fine not exceeding $200."

It seems now to be quite well settled that the donation of aid in the way of land or money to a State, county, or public body for the purpose of inducing the location of public buildings or of a county seat at a particular place is not considered a bribe to the individual voters, within the meaning either of the common law or of our statute (Beham v. Ghio, 75 Texas, 87); but we know of no case in which it has been held to be a legal contract to offer to an individual elector a pecuniary inducement to influence his vote as such, whether the election be for an office or for the location of a county seat, as in this case, and we are of opinion that all such contracts are illegal, null, and void, both at common law and under our statute.

We believe the reasons given for the decisions which recognize the right to offer inducements of this kind to the public as a body must lead to the conclusion that this practice can not be tolerated when the inducement, instead of being extended to the entire body politic, is offered to the individual voter, even though it be contemplated that every voter in the county is to be operated upon, as set forth in the charge given. We fail, however, to find in the record any evidence that all the voters were to be made interested in this particular place by the gift of a lot or lots, as supposed in the instruction. We therefore conclude that under the evidence in this case, the giving of this charge by the court was such an error as will require the reversal of the judgment rendered in the court below.

We will state, however, in justice to the parties, that they seem to have entertained a different view of the law, and did not consider that they were doing anything illegal in securing the selection of their place as the county seat of this county by the means detailed by appellee in his testimony.

We are not prepared to hold that the court erred in overruling appellants' exceptions to the pleading of appellees, upon the ground that it showed upon its face an illegal contract. We also think the court did not err in holding that Walton, Hill & Walton had the right to transfer to appellees an interest in their part of the compensation to be received, and that if appellants had notice of such transfer, their settlement with

Walton, Hill & Walton would not be binding upon appellees. We think both the contracts contemplate such an assignment, and impliedly, if not expressly, authorize it.

We are also of opinion that appellants were the common source under which all the parties claimed, and it was therefore not necessary for appellees to introduce other evidence than the contracts themselves to show that appellants were the owners of the land. Pierson v. Flannagan, 52 Texas, 266. There was therefore no reversible error committed in the admission or rejection of evidence as to appellants' title, as complained of in the assignments.

It is hardly possible that the questions presented by the other assignments will arise in the same form upon another trial, and they will therefore not be considered.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded*

Delivered February 7, 1894.