### W. R. LEE v. TEXAS & NEW ORLEANS RAILROAD COMPANY.

Decided January 31, 1900.

**1. Practice—Findings of Fact by Trial Court.**

Where, in a case tried without a jury, the trial court's findings of fact conclude with the statement that further specific findings are not necessary, and "the statements of facts is also refeerred to as a part thereof," all issues in the evidence will be resolved by the appellate court in favor of the judgment.

**2. Sheriff's Sale—Inadequacy of Price and Fraud—Setting Aside.**

A sheriff's sale will be set aside at the instance of the judgment creditor, for inadequacy of price and fraud, where the sheriff and the purchaser were closely connected with each other in their official capacities, and the sheriff, at the purchaser's instance, sold the property half an hour earlier than the usual time, and during the temporary absence of the plaintiff's agent from the courthouse.

**3. Same—Negligence Not Shown.**

Negligence on the part of plaintiff's agent in not being present at the sale is not shown where it appears that he would have been present had the sale not been made half an hour earlier than the customary time.

ERROR from Harris. Tried below before Hon. WILLIAM H. WILSON.

*Clark, Ball & Fuller* and *D. A. Holman,* for plaintiff in error.

*Denman, Franklin, Cobbs & McGown,* for defendant in error.

JAMES, CHIEF JUSTICE.—This is a proceeding to set aside a sheriff's sale by reason of irregularities therein and inadequacy of the consideration.

The defendant in error on March 7, 1897, obtained a judgment against J. E. Ward for something over $4000, in the District Court of Harris County, foreclosing a vendor's lien on a certain survey near Seymour,

Texas, and the sale thereunder, now in question, was made under an order of sale on first Tuesday in September, 1897.

The land was shown by the testimony to have been worth not less than $600, and there was testimony placing its value as high as $2000. The court found the value to have been $1500. It was bid in at the sale for $51. It is not claimed that it was not sold for an inadequate price. The contention is that there are no sufficient circumstances shown to warrant setting the sale aside, and also that the judge's findings of fact on the material points are not in accord with the evidence. The findings of fact in this record are in form peculiar, and conclude thus: "It is not necessary for the court to make any further specific findings of fact to support this judgment, and the statement of facts is also referred to as a part hereof." This shows that the judgment of the court was based not only upon the findings stated, but upon the testimony generally, and therefore we take it that all issues in the evidence must be resolved by this court in favor of the judgment.

The order of sale was sent to the sheriff of Baylor County, by Franklin & Cobbs, attorneys for plaintiff, in a letter dated July 20, 1897, from San Antonio, Texas, asking him to advertise the land for sale at September sale day, and asking to be advised when advertisement was made so that they could have a man there to see that the property was not sacrificed. On July 29th, plaintiff wrote to Fancher Bros., its correspondents at Seymour, to attend the sale on the first Tuesday in September, and bid in the land for plaintiff, unless there were other bidders offering approximately the judgment, in which event to let it go. E. A. Fancher was and had been for a long time plaintiff's agent at Seymour for making sales and leases of its lands and attending to its land affairs generally in Baylor County; had attended the sheriff's sales in that court on behalf of plaintiff in July and October of 1896; had represented plaintiff before the board of equalization; and the fact of his agency was there generally known and understood. He had a few days before made inquiry of the deputy who made sales as to when this land was going to sell. It does not appear, however, that plaintiff or Fancher had in terms notified the sheriff that the latter would be present at the sale. Fancher had his office in the courthouse.

It appears that there were only two sales made that day, this one and another one of two lots upon a judgment in favor of a Mrs. Morris, for whom Fancher was also the agent. There is evidence that the sale took place about thirty minutes earlier than was customary in that county. It appears that about 11:30 o'clock on that day Fancher went about one and one-half miles into the country on some business, and returned just after the sales were finished. Efforts on his part to get the purchasers to allow a resale of the property failed. They afterwards, and before this proceeding, sold the land to W. R. Lee, the appellant, for $300.

It appears that Fancher expected to be back to the courthouse in time to attend these sales, and did so, had the sales not taken place before the

customary time.  D. A. Holman, attorney for Mrs. Morris, had a confer-
ence with Fancher in regard to that sale, just before the latter left, and
expected Fancher back in time for the sale.  He went to the courthouse
to see the county judge, Taylor, and first went to the sheriff's office
and asked him to hold up the sale for a while, as Fancher had promised
him to be there and he wanted to see him before the sale (referring of
course to the Morris sale).  This the sheriff agreed to do.  In a short
time after this the sheriff appeared in Judge Taylor's office, where Hol-
man was, and stated that some of the parties interested were urging the
sale to commence, to which Holman replied:  "Go ahead, but reserve the
Morris sale until the last, and by that time Fancher will be on hand."
The sales then took place; the land in controversy was sold to D. L.
Kenan, the county attorney, and Nat G. Mitchell, the deputy district
and county clerk, for $51, the deed being taken to Mitchell on account
of the insolvency of Kenan.

The effective finding of the judge is in the sixth:  "The court finds
from the evidence that all of said parties were so closely connected
with each other in their official capacity and from their acts and conduct
and from the circumstances introduced in evidence, they were acting to-
gether for the purpose of securing the sale of the property in the absence
of plaintiff or plaintiff's agents, and the facts and circumstances and ir-
regularities are such that the court finds the same was a fraud upon
the rights of plaintiff."

There are some specific findings of the district judge complained of as
being opposed to the evidence, but which we believe are founded upon
and fairly inferable from the evidence, in substance at least.  These
facts briefly and substantially stated are, that the sheriff was notified
by plaintiff that it desired to have some one on the ground to bid at the
sale; that he knew Fancher Brothers were the agents of plaintiff; that he
knew Fancher had gone out into the country a litle ways and would re-
turn shortly; that he (not the deputy sheriff, as stated) first agreed to
postpone making sales until the return of Fancher, and shortly after-
wards, after conferring with parties who he said were interested, refused
to wait, and caused the sales to take place.

The above findings might have been amplified by a further finding
of a fact which is clearly apparent, viz., that the interested persons
who urged the sale to be made were the purchasers at the sale, the
deputy clerk and county attorney.  We know this because it does not
appear that any persons were interested in the sale of lots under the
Morris judgment, except Holman and County Judge Taylor, in whose
office he was consulting about the Morris sale, and in whose presence,
doubtless, the sheriff made the statement that persons interested were
urging the sale to begin.  They evidently were not the persons urging
the sale.  Ward was shown to have taken no interest in the sale.  Tay-
lor, the county judge, bid on the land in question, also one John Coil.
John Coil could not have been the *persons* insisting on the sales be-
ginning.  It is unmistakable that Mitchell and Kenan were the persons

referred to by the sheriff. Mitchell testified that Kenan came to him about noon, and told him that if he would go in with him they would try and buy the land, and that if they got it they would have a bargain, and accordingly they went in together and bought it. It appears that they started in to get a bargain. The fact that the going in together occurred about noon, soon after Fancher had left town and not until then, to get the land for a trifle, and that they procured the sheriff to sell sooner than he otherwise would have done, and just before Fancher's return, indicates very strongly that they knew Fancher's situation and intentions, and saw their opportunity in his absence and took advantage of it by hurrying the sale and forestalling him.

We approve the finding of fact number 6 as above quoted. It is expressed in very broad terms, but the testimony warrants the conclusions as stated. The circumstances are of a nature and are sufficient, in connection with the inadequate price, to entitle plaintiff to have the sale set aside. Chamblee v. Tarbox, 27 Texas, 146; Pearson v. Flanagan, 52 Texas, 280; Atchison v. Owen, 58 Texas, 615; Hughes v. Duncan, 60 Texas, 75; Johnson v. Crawl, 55 Texas, 571.

The court also found that Lee purchased with full knowledge of the circumstances under which the sale was made. Kenan says he saw Lee about 5 o'clock in the afternoon, who asked him why he didn't let him know something about the sale; that he would have paid him $25 for the information. It is fair to infer from this that he was informed of the bargain and how it came to be made. Jones, who acted for him in purchasing the land, is shown to have known all the circumstances. Besides, he purchased after being warned by Kenan that he would be buying a lawsuit with plaintiffs. This could only have referred to the probability of plaintiff moving to set aside the sale.

As to the contention that plaintiff is not under any circumstances entitled to be relieved, because the absence of Fancher, its agent, was negligence, it is plain that if, as there is evidence to show, he was on hand before the customary hour for making sales in that county, he can not be held negligent, for the purpose of barring plaintiff from setting the sale aside for the affirmative unfair acts practiced to secure an unconscionable advantage of plaintiff. The decree provides for the restoration to plaintiff in error of the $51.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.