**FIRST NAT. BANK IN BROWNSVILLE v. BROWNE et al. (No. 8230.)**

Court of Civil Appeals of Texas. San Antonio.
May 29, 1929.

Rehearing Denied June 26, 1929.

Faulk & Abney, of Brownsville, for appellant.

Graham, Graham & Graham and Seabury, George & Taylor, all of Brownsville, for appellees.

COBBS, J. Appellant sued appellees, alleging Agnes A. Browne died in Cameron county, December 4, 1927, leaving a will which was duly probated, and in which she left certain property in trust. She left a one-fifth interest in all her property to James A. Browne, and a one-fifth interest to each of her other three children; and provided that the executrix "shall hold the remaining one-fifth of my said property * * * in trust for my grand-children * * * until the youngest thereof at the time of my death shall have reached the age of twenty-one years."

At the time of the death of Agnes A. Browne, her son James A. Browne, one of the devisees in the will, was indebted to various persons. Judgments were rendered against him and his property levied upon and sold under execution to John Gregg.

On May 28, 1928, the First National Bank in Brownsville, Tex., recovered a judgment against James A. Browne, for $1,664.70, in cause No. 7545, and on the same day the judgment was duly abstracted and recorded in volume E, page 248, of the Abstract of Judgment Records of Cameron County, Tex.

John Gregg purchased the three named first judgments, and execution was issued on each of said judgments and levy was made on the one-fifth interest of James A. Browne inherited by him from his mother, and on July 3, 1928, all of this property was sold under three separate execution sales and purchased in by John Gregg, the owner of the judgments, to whom the sheriff executed and delivered three separate sheriff's deeds, conveying in each sale the identical property, being the undivided one-fifth interest of James A. Browne in his mother's estate.

The property was not sold in parcels, but, at the request of James A. Browne, through his attorney, the sheriff sold the property in bulk. He requested "that his entire interest in said estate levied on under execution be sold as a whole."

The pertinent and important part of the will for construction and consideration is:

"Second: I hereby devise and bequeath to each of my four children, James A. Browne, Irene Mason, S. P. Browne and Mary Smith, an equal one-fifth interest in all property of every nature owned by me at the time of my death.

"Third: I hereby devise and bequeath to all of the children living at the time of my death, children of my four children, above named, in equal shares, a one-fifth interest in all the property of every nature owned by me at the time of my death.

"Fourth: I hereby direct my Executrix, hereinafter named, as soon after my death as convenient, to pay all my just debts and to divide the remainder of my property, after payment of such debts, into five shares as

nearly equal as may be, and to deliver and convey to each of my four children, above named, one of said shares or a one-fifth of said property: and I direct that my said Executrix shall hold the remaining one-fifth of my said property, after the distribution above provided for, in trust for my grandchildren * * * until the youngest thereof * * * has reached the age of twenty-one years. * * * And at all times prior to her final distribution of the interests * * * willed to my grandchildren, my executrix shall carefully invest and place to the most profitable use said property so entrusted to her. * * * "

We find no difficulty in holding that James A. Browne under the very terms of the will took "an equal one-fifth interest in all property of every nature" owned by Agnes A. Browne at the time of her death. That is clearly stated in the second paragraph of her will. Then, again, in the third paragraph she says "my four children above named," etc. Again, in paragraph 4, the executrix is directed "to divide the remainder of my property, after payment of such debts, into five shares as nearly equal as may be, and to deliver and convey to each of my four children, above named, one of said shares, or a one-fifth of said property: and I direct that my said Executrix shall hold the remaining one-fifth of my said property, after the distribution above provided for, in trust for my grandchildren."

Now, the main and ultimate question for our determination is: Was the property of James A. Browne subject to be seized and sold under execution? We think not; it was in the hands of the administratrix to be administered, and was therefore in custodia legis. It was in the hands of one acting under the terms of a written will and was held subject to the orders of the probate court, or of the trustee named.

We do not think the sale should be set aside alone on the inadequacy of the price, but because the property in the hands of an administratrix for settlement is out of reach of an execution creditor.

It is true that James A. Browne authorized the sale to be made in bulk to his brother-in-law, that arouses some suspicion. Yet, whatever may have been the purpose, if the property was sold for a sum so greatly inadequate, being about 8 per cent. of the true value, this fact, coupled with other irregularities, should not allow the sale to stand.

As said by Chief Justice Fly in the case of Moore v. Miller (Tex. Civ. App.) 155 S. W. 575, in which the court approved the rule laid down in Pearson v. Flanagan, 52 Tex. 280: "The weight of authority, including that of this court, is, that mere inadequacy of price, of itself, is not sufficient to set aside a sheriff's sale otherwise valid, but that gross inadequacy of price, in connection with slight additional facts showing fraud, irregularity, or other circumstances calculated to prevent the property from bringing something like its reasonable value, might avoid the sale."

This leaves but one thing to be done by us, and that is to reverse the judgment of the trial court and remand the case for another trial.