SAMUEL L. ALLEN V. CHARLES STEPHANUS.

Where the plaintiff has brought his action of trespass to try title, and, upon plea of not guilty, there has been judgment for the defendant that he go hence without day, &c., it is not a good objection to another action, allowed by the Statute, (Hart. Dig. Art. 3226,) that it is not an action of trespass to try title, but in the nature of a suit in equity to annul defendant's title and recover the property ; such suit being equivalent to an action of trespass to try title.

See this case as to the necessity of stating the particular objections to the charge of the Court, in the assignment of errors.

In order to obtain a revision of error in the charge of the Court, it is not necessary to make such error the ground of a motion for a new trial.

See this case as to agreements not to bid at a judicial sale.

It will suffice to say, that there are circumstances from which the jury might infer such fraud as would invalidate the sale, (a Sheriff's.)

The rule as laid down in the charge of the Court, and as it is generally expressed is, that inadequacy of price, at a sale made under process of law, is not sufficient, without additional circumstances, to invalidate the sale, (not on a question of confirmation.) But in cases where the disproportion is so enormous as in this, but slight additional circumstances will justify the inference that the sale is fraudulent.

Appeal from Harris.    Tried below before the Hon. Peter W. Gray.

Petition filed by appellee May 6th, 1854, against appellant. It averred title in the plaintiff to a certain lot of ground in the city of Houston ; that he was in peaceable possession of the same on the 1st day of Sept., 1852 ; but that on said 1st day of Sept., 1852, said defendant with force and arms, broke and entered into and upon said premises, and then and there ejected plaintiff therefrom, and other wrongs then and there did, to the damage of plaintiff $1000.   Plaintiff further alleges, &c.   The petition went on to allege the facts which were afterwards offered in evidence, and concluded with a prayer for judgment

for the possession of said land, that defendant's title deeds be cancelled, &c., offering to pay the price bid at the Sheriff's sale. There was no indorsement to the effect that the action was brought as well to try title as for damages. By amendment, H. H. Allen and Hogan were afterwards made parties, defendant.

S. L. Allen answered by plea of not guilty ; and by special plea of title as afterwards given in evidence ; and afterwards by amendment, filed a plea of former recovery, to which last plea the Court sustained exceptions. It was as follows, to-wit: on the 6th day of October, A. D. 1852, the said plaintiff, by his petition filed in the office of the Clerk of this Court, impleaded this defendant in a certain action of trespass to try the title to the same land and premises described in his original and amended petition in this suit. And afterwards, to-wit: at the Fall Term, 1852, of this Court, this defendant filed his answer to said petition, wherein he pleaded that he was not guilty of the several supposed trespasses in the plaintiff's petition alleged against him, and put himself upon the country. And issue was thereupon joined upon said plea ; and afterwards, to-wit : at the Fall Term, 1853, of the Court, to-wit : on the 16th December, 1853, the said cause came on to be tried, and was then and there tried, in due course of law, by a jury of the country, duly impanneled, chosen, sworn, &c., in that behalf; which said jury, on said trial, then and there, rendered their verdict as follows, to-wit : "We, the jury, find for the defendant." Wherefore afterwards, to-wit : on said last named day, it was ordered, adjudged and decreed, by the Court, that the plaintiff take nothing by his suit, and that the defendant, Allen, go hence discharged, and recover of the said plaintiff, Charles Stephanus, all costs herein expended, as by the record of the proceedings in said cause, now remaining in this Court, more fully appears ; which said judgment still remains in full force and effect, not in the least reversed or made void ; and this the defendant is ready to verify by said record.

The evidence was as follows :

J. J. Cain, for plaintiff. Knows lot at foot of Main Street, opposite his warehouse. It was worth, in Feb., 1851, in my opinion, $600. I was willing to give that amount. Somewhere about that time I offered plaintiff that amount for it. It was after I had seen advertisement of sale. The sale was to be at the Court House door, which was then at Schrimpf's building. I went there on the day appointed to buy it, but the Sheriff adjourned the sale and I left. Do not remember seeing plaintiff there. Sam. Allen, H. H. Allen, T. M. Bagby and, I think, Wm. R. Baker were present; I saw them talking together; I saw the Sheriff, also, talk with them, but do'nt know what about. Never saw any other advertisement, nor attended any other sale. Do'nt remember to have seen H. H. Allen and Baker consult together. The lot is now worth $1500. There was a shed-building put on the lot by defendant Allen; it was a temporary building and was taken away some two years ago.

Cross-examined. Do'nt remember the month or year, or season when I saw the advertisement, and when I attended. I understood the Sheriff to say that the sale was over; can't say that Sheriff talked more with Allen, &c. than with others. They may have been talking of other matters.

Re examined. Am certain the lot in question was advertised. When the Sheriff said the sale was over, I asked him why this lot was not sold, and he said the parties had compromised, or settled the execution. If plaintiff had been present I think I should have seen him.

Wm. R. Baker, witness for plaintiff, shown an execution against Stephanus, from Probate Court. It was dated Feb. 27th, 1851; was in favor of H. H. Allen, Chief Justice, and other officers of Court, for costs; was indorsed with a levy on the lot in controversy, March 11th, 1851; and returned April 1st, 1851, settled in full, without a sale. Witness testified as follows:

Witness was Clerk of the County Court and issued said execution at instance of the Chief Justice Allen, who had con-

trol of it. The lot was advertised for sale under it, and no sale had, because the execution was settled a day or two before, or on the day of sale. The lot was levied on with another execution and advertised for sale ; don't remember whether before or after the execution that was settled. I attended the sale when the lot was sold to H. H. Allen. Bagby and Sam Allen were not present during the day, and I have no recollection of seeing Mr. Cain. When the sale commenced I stepped out of my office with the intention of bidding for the property for the benefit of Sam Allen and T. M. Bagby. I found that H. H. Allen had already made a bid, and I asked him whether he was bidding for himself ; he said he was bidding for Allen & Bagby, and I then told him that I had intended to bid for the same purpose, but if that was the understanding, I would not bid and declined doing so. I had no direction or authority from S. Allen or Bagby to bid for them. Bagby is my brother in law ; and, knowing the situation of the lot, and that it would be beneficial to them to own it, I acted as a self-constituted agent to buy it. I remember Mr. Henderson speaking to me about the sale, but can't recollect precisely what passed ; may not have been so explicit in stating my motives for bidding, as I have now. I intended to bid for Allen & Bagby, but declined on the understanding that H. H. Allen was bidding for them. If Bagby was not interested with Sam Allen I should not have thought o. bidding at all. The indorsement of receipt on the execution from Probate Court is in the hand writing of H. H. Allen. When I asked H. H. Allen for whom he was bidding, he may have said for Sam Allen, but my recollection is not distinct as to the precise language ; my understanding was, his bid was to be for both Allen and Bagby.

B. F. Tankersly. Brought suit, before this one, against S. L. Allen for Stephanes ; had a conversation with S. L. Allen about it ; he wanted to compromise the matter and offered 700 acres of land on Galveston Bay for Stephane's title. Don't

know the value of the land, but I thought it of less than Ste-phane's title and so advised him. The lot adjoins Allen and Bagby's warehouse on Main street, and is of more value to them than any one else, from its position.

W. C. Reeves, for defendant, proved Justice's docket and judgment of Fuller, adm'r of Young v. Stephanes ; that he issued execution on it at the date stated on docket; can't remember what has become of it. It may have been returned by Sheriff. The papers have been in Court several times in hands of the lawyers and others, and may have been mislaid ; has carefully searched for it in his office and cannot find it. Saw the Sheriff's advertisement of the lot, stating that he had levied on the lot in suit.

There was an agreement as follows : It is agreed by the parties in this case, that the substance of the proceedings appear-ing on docket of W. B. Reeves, the Justice of the Peace in the suit of Nathan Fuller, adm'r, &c. v. Stephanes, be inserted in the statement of facts as follows : It is agreed that there was a valid, subsisting and unsatisfied judgment in favor of Nathan Fuller, adm'r, &c., v. Charles Stephanes, for $30, with interest from February, 1849, and costs of suit, appearing on said docket, rendered on the 5th day of October, 1850 ; that exe-cution was regularly issued on said judgment on the 17th of October, 1850 ; that said execution was levied on property which was sold for the sum of $21 50, and the execution re-turned, with that sum returned thereon, not satisfied, Decem-ber 11th, 1850, by F. L. Viven, a constable of Harris county, and that an alias execution was regularly issued for the bal-ance due on said judgment, and costs, on the 11th January, 1851, and directed to the proper officer of Harris county ; and that under said alias execution the property in controversy was sold.

Defendant then read in evidence a deed from J. B. Hogan, Sheriff, dated February 4th, 1851, to Harvey H. Allen, for the lot in controversy. It purported to have been made in pur-

suance of a sale under an execution issued by William B.
Reeves, Justice of the Peace, &c., on the 11th January, 1851,
on a judgment in favor of Nathan Fuller, administrator, &c.,
against the said Stephanes ; the deed recited that the execu-
tion was received on the 13th day of January, 1851, and
levied same day on the lot in controversy ; that the sale took
place on the 4th day of February, 1851, and that the property
was knocked down to H. H. Allen at $30. Defendant then
read in evidence a deed from H. H. Allen to him, dated Feb-
ruary 20th, 1851.

A. N. Jordan, for plaintiff, testified that he wrote the deed
from H. H. Allen to S. L. Allen sometime in 1853 ; he was
not in Texas at the date of the deed,; he wrote it at request
of one of the parties to it, or of Mr. Palmer in whose office
he was.

The Court, without request, instructed the jury as follows :

On the pleadings and evidence in this case, the right of the
parties mainly depend on the validity of the Sheriff's sale to H.
H. Allen. The defendant, claiming by title derived from the
plaintiff, thereby admits that the plaintiff had a title on which
he can recover, unless the sale to defendant H. H. Allen, was
valid.

The judgment of Fuller, adm'r, against plaintiff, with proof
of an execution, issued by the Justice, (if you believe from the
evidence that it was issued and has been lost,) and the Sheriff's
deed to H. H. Allen, and his deed to S. L. Allen, are sufficient
evidence of title in defendant, unless rebutted by proof that
the sale was invalid for fraud or illegal combination at the
sale, as alleged.

Fraud, though not to be presumed, yet may be inferred from
circumstances, which taken together and considered in connec-
tion with each other, satisfy the mind of its existence.

These circumstances must be such, as relate to, or are con-
nected with the transaction, alleged to be fraudulent ; subse-
quent offers to compromise, or subsequent attempts to sell the

property under other executions, are not evidence to establish fraud in the sale, or to affect its validity.

If the price at which the property was sold was greatly less than its value, that is a circumstance to be considered in connection with others as indicative of fraud; but it is not sufficient of itself to establish it. The question still remains, how was that inadequacy of price produced? If there is a combination or agreement to prevent competition at a public sale, so as to depress the fair market value of property to be sold, which does in consequence sell for less than its value, it is against public policy, and a fraud upon the owner, which he may set aside. But the law does not bind any man to bid for property offered at sale, nor to do any act against his own interests, or against those of other persons; nor is any one bound to bid against others, whom he finds are desirous of purchasing. Partners in trade may lawfully agree to buy at a public sale on joint account, and those acting for them are not bound to bid against each other, and may agree not to do so, if they do no act calculated to prevent others from bidding. But when persons assume to act for others, who afterwards claim under those acts, then they are bound by the acts of such agents, and take no better right or title than they would have done. If then you believe from the evidence that there was a combination or agreement between Allen & Baker, acting for themselves, or for separate persons, not to bid against each other, with the understanding that the property should be divided between them, and with the design of causing the property to sell for less than it otherwise would have done, or less than its value, and in consequence of which it did sell for less than its value, then you will find for the plaintiff.

Or again, if H. H. Allen was acting for defendant, S. L. Allen, and he and the Sheriff acted together with a view of enabling Allen to buy the property at a less price, or to defraud the plaintiffs, and the Sheriff postponed the sale by announcement, and afterwards sold the property under the same execu-

tion, so that bidders, who were present at the postponement, and who desired to buy, were not present at the sale, then also you will find for plaintiff. But if you believe otherwise from the evidence on the last point, or if, on the first proposition, Allen and Baker were both acting or intending to bid for Allen & Bagby, who were partners in trade, and they agreed that one should bid for both, then find for defendant.

Verdict and judgment for plaintiff. Motion for new trial overruled ; and defendant, S. L. Allen, appealed.

*A. N. Jordan,* for appellant. I. The plea of former recovery should have been sustained. The second suit, for which the Statute provides, is an action of trespass to try title, to be tried conformably to the action of ejectment; that is, upon the legal title ; whereas this suit admits the legal title to be in the defendant, and seeks, conformably to the proceedings in a suit in Chancery, to have such title anulled, &c. (Adams on Eject. 33 *et seq.*, and notes ; Jones v. Jones, 7 Term. R. 47 ; Morris v. Runnells, 12 Tex, R. 176.)

II. Although it is believed that the charge is not in accordance with the principles established by this Court in the case of James v. Fulcrod, 5 Tex. R. 512, yet as this was not assigned as a ground in support of the motion for a new trial, it is perhaps too late, according to the rules of practice established by this Court, to urge the objection on appeal.

III. The verdict of the jury was wholly unsupported by the evidence in the case. The testimony of the witness Cain is relied on to show a fraudulent combination between H. H. Allen, Baker and the Sheriff, for the purpose of enabling H. H. Allen to purchase the property at less than its value. But the facts show beyond a reasonable doubt, that Cain was not present on the day when the property was sold to satisfy the execution from the Justice's Court, and bought by H. H. Allen, but that the day when he was present at the Sheriff's sale, was the 1st Tuesday in April, 1851, which was the first day of the

month, when the property was advertised to be sold to satisfy the County Court execution, but was not sold because the excution was settled on that day.

The facts disclose no such agreement between Baker and H. H. Allen, for the purpose of preventing competition, and purchasing the property at less than its value, for their mutual advantage, as has been declared by this Court to be against public policy, and a fraud upon the rights of the defendant in execution.

*J. W. Henderson,* for appellee. I. In answer to first assignment, refer to Hart. Dig. Art. 3226.

II. The particular error complained of, in the charge of the Court, is not assigned ; let the charge speak for itself.

III. This Court will not reverse the judgment, on the ground of error in refusing a new trial, unless the verdict be wholly without evidence to support it. (Meuley v. Meuley, 9 Tex. R. 60 ; Davidson v. Edgar, 5 Id. 492 ; Briscoe v. Bronaugh, 1 Id. 340 ; Lang v. Stringer, 8 Id. 460 ; Chevaillier v. Denison, Id. 439 ; Ables v. Donley, Id. 331 ; Willis v. Barnett, 7 Id. 584 ; Sims v. Chance, Id. 561 ; Clark v. Davis, Id. 556 ; Paul v. Perez, Id. 338 ; Mitchell v. Watson, Id. 3 ; Cunningham v. The State, 5 Id. 440 ; Carter v. Carter, Id. 93 ; Edrington v. Kiger, 4 Id. 89.)

The question of fraud raised by the pleadings was fairly presented to the jury, and it was a question of fact for them to find ; we say it was from the facts proven, and circumstances of the case fully sustained by the proof, and refer the Court to the following cases decided by this Court : Walcot v. Brander, 10 Tex. R. 419 ; DeLeon v. White, 9 Id. 598 ; Thompson v. Shannon, 9 Id. 536 ; Graham v. Rider, 5 Id. 141; McGimpsey, Gill et al v. Ramsdale, 3 Id. 344.

In this case there are many badges of fraud, besides positive proof of the same. And of this, first, although the considera-

tion for which the lot sold at Sheriff's sale, being only thirty dollars, and it being worth six hundred at the time, was not sufficient of itself, to establish the fraud ; yet it is a circumstance taken in connexion with other facts in the case, from which the jury might infer fraud. See the following authorities decided upon this very point : (Story on Contracts, Sec. 432 ; Williams v. Parnell, Wendell Eq. R. 460 ; Hardeman v. Burge, 10 Yerg. R. 202 ; Udall v. Renney, 3 Cow. R. 590 ; Thompson v. Shannon, 9 Tex. R. 536.)

Again, the deed from H. H. Allen to Samuel L. Allen purports to have been made a few days after the sale of the said lot by the Sheriff to H. H. Allen, when in truth and in fact it was not made until 1853.

Another fact is, that after H. H. Allen had purchased the lot at Sheriff's sale, he goes into his own Court, (being Judge of the County Court,) and ordered his Clerk, William R. Baker, to issue an execution from said Court, against Stephanes, and points out the same lot which he pretends to have honestly purchased at Sheriff's sale, and which he pretends to have fairly sold to his brother, Samuel L. Allen, at that time.

Again, there is an apparent conflict in the testimony of Cain and Baker, but of the credibility of the witnesses, it was the peculiar province of the jury to give what weight they chose. (Nels v. The State, 2 Tex. R. 280 ; Perry v. Robinson, adm'r, 2 Id. 490 ; Carter v. Carter, 5 Id. 93.)

But upon a critical examination of Cain and Baker's testimony, it will be seen, that they concur upon many points, and the only one they differ upon is, that Samuel L. Allen and Bagby were not there on the day of the sale ; this Baker says ; Cain contradicts him ; they both agree that Stephanes was not present when the lot was sold by the Sheriff ; and Cain says he was not there as long as he staid, and he staid until the sales were announced as over. Appellant will contend that the time Cain attended the sale of said lot by the Sheriff was when it was to have been sold by virtue of the execu-

tion of the County Court, but this could not have been the case, as Stephanes was present at the time this sale was to have taken place, and paid up the execution, and Cain would have seen him. And as evidence that Stephanes was not at the first sale, why would he have paid an execution levied upon property that had been sold, if he knew anything about the first sale? And there is also evidence tending to show that he was in New Orleans when the first sale took place, and is it reasonable to suppose that Stephanes would have stood by and permitted property to be sold for thirty dollars, that would have brought six hundred dollars at a fair sale, if he had been in town, or at the sale?

We contend that H. H. Allen's representation to Baker on the day of sale, that he was there for the purpose of buying the lot for Samuel L. Allen and Thomas M. Bagby, was false and fraudulent, and done with a view to stifle competition, and was a fraud on the vendor, as all his subsequent acts show, and this conduct on the part of H. H. Allen was against public policy, and a fraud upon the vendor, and his purchase of the lot by this combination with Baker and others rendered the sale void. (Story on Contracts, Sec. 518, 548 ; 1 Story Eq. Jur. Sec. 293 ; Phippen v. Stickney, 3 Met. R. 384.

The agreement between H. H. Allen and Wm. R. Baker not to bid against each other was against public policy ; for it will be recollected that they were not the agents of Samuel L. Allen or T. M .Bagby, and refer to the following authorities : Jones v. Carswell, 3 Johns. 29 ; Doolin v. Ward, 6 Id. 194 ; Wilbern v. Home, 8 Id. 444 ; Thompson v. Davis. 13 Id. 112 ; 4 Cowen R. 718 ; 2 Stewart R. 175 ; Platt v. Oliver, 1 McLean, 295 ; Hamilton v. Hamilton, 2 Rich. Eq. 355 ; Smith v. Green-lee, 2 Dev. 128 ; James v. Fulcrod, 5 Tex. R. 512 ; Crozier, Rhea & Co. v. Carr, 11 Tex. R. 376.

*C. B. Sabin*, also, for appellee.

HEMPHILL, CH. J.   The appellee, Charles Stephanes, files his petition to set aside a Sheriff's sale of a lot owned by him in Houston, at which sale H. H. Allen was the purchaser; S. L. Allen, claiming from the said H. H. Allen by a subsequent conveyance, and J. B. Hogan, the other defendant, being Sheriff at the time of the sale.   The plaintiff alleges that the sale was not fairly made; that it was by fraud and collusion between these defendants; that the subsequent conveyance to S. L. Allen was a mere trick and contrivance; the whole proceeding from the beginning being a mere fraudulent, collusive scheme, by which to defeat the title of the plaintiff, and deprive him of his property.

The law of the case was fully explained in the charge of the Court, and the jury having found for the plaintiff, the defendant S. L. Allen alone has appealed, and assigns that the Court erred—

1st. In sustaining plaintiff's exceptions to that part of defendant's answer, pleading the judgment in the former suit between the same parties touching the same subject matter, in bar of a recovery in this suit.

2d. In the charge to the jury.

3d. In overruling defendant's motion for a new trial.

The previous suit, referred to in the first assignment, was one brought by the present plaintiff against S. L. Allen alone, being an action of trespass to try the title, in which there was judgment for the defendant.

This action is between the same parties that were in the former suit, but there are also other parties defendant, who were not in the former.   If the present action be regarded as equivalent to an action of trespass to try the title,—and the result shows that by no species of action could the title be more effectually divested out of one party and vested in the other,—then the former recovery is no bar to the present action. (Art. 3226, Hart. Dig.)   In the States in which the distinction between the Common Law and Chancery jurisdiction is

recognized, a recovery in ejectment or trespass to try title, on the legal title, would, it is believed, be no bar to this proceeding in equity to annul the title of the purchaser as having been obtained through fraud.   There was no error in sustaining the exception of the plaintiff to so much of the answer as set up the judgment in a former suit, as a bar to this action.

The second assignment, that the Court erred in its charge to the jury, specifies no particular error as a ground of complaint.   It is objectionable on this ground, the charge being full, and embracing several legal propositions.   But this assignment has not been insisted upon by the appellant, from some apprehension that as the objection to the charge was not made a ground in the motion for a new trial, it would not be heard in the Supreme Court.   This would, perhaps, be a correct rule ; but, so far, it is believed not to have been sanctioned in practice.   No judgment will be reversed in this Court, on the ground that the verdict is not supported by the evidence, unless there had been a motion for a new trial in the Court below ; but the rule has not been extended, it is conceived, to errors in the charges of the Court.

The appellant has indicated his opinion that the charge is not in accordance with the principles established in the case of  James v. Fulcrod.   (5 Tex. R. 512.)   But this is believed to be a mistake.   The general rule is, that an agreement not to bid at a public auction, is void, as against public policy, and tending to fraud, and that no party to such agreement can claim any benefit from it or from the sale ; but there are exceptions to the rule.   These are specified in some detail in the case of  Jones v. Fulcrod ; and the Court, in its charge in this case, referred substantially to such cases of exceptions as could be claimed under the facts in evidence.   Without entering into a critical examination of the propositions in the charge, we are of opinion that there was no departure from the principles established by the previous decisions of this Court.

The third assignment is, that there was error in overruling the motion for new trial.   The grounds of the motion are, that the verdict is contrary,

1st. To the evidence.

2d. To the law.

3d. To the charge of the Court.

The first ground, viz. : that the verdict was contrary to the evidence, is the only one requiring notice.

The counsel for appellee has collated with much industry, numerous cases from our previous decisions, to establish the proposition that where there is a conflict of evidence the verdict of the jury will not be disturbed.   He insists that the question of fraud, raised by the pleadings, was one of fact peculiarly within the province of the jury ; that the issue was fairly presented to them, and that their verdict is fully sustained by the proof.

The counsel for appellant contends that the verdict is wholly unsupported by the evidence ; and as such he claims that it should be set aside.

It is not my intention to go through the whole of this evidence, to refer in detail to all the facts which might be regarded as badges of fraud, or which might be explained consistently with an honest purpose.

It will suffice to say, that there are circumstances from which the jury might infer such fraud as would invalidate the sale.   It is true, that neither juries nor Courts are to be allowed to annul or disregard rights acquired under private or public sale, from the fact that all the circumstances attending them may not, when years have elapsed, be susceptible of satisfactory explanation.  But in this case there are some marked features indicative of fraud, which support the verdict, and against the force of which the Court would not be authorized to set it aside.   In the first place, the inadequacy of price paid was enormous, not amounting to more than one-twentieth of the value, as proven by a witness, which that witness was willing,

and about that time had offered, to give the plaintiff for the lot. It has been held in South Carolina, that where unfair means have not been employed to prevent competition at Sheriff's sale, inadequacy of price, however great, is no ground for setting the sale aside. (2 Strobhart, Eq. 285.) It might be difficult to fix any precise limit, at which inadequacy of price should, of itself, be sufficient cause to set aside a judicial sale ; but it would seem that in some cases the disproportion might be so shocking and enormous, as to justify a rescission of the sale. In Kentucky it has been held that an enormous inadequacy of price at Sheriff's sale weighs heavy, and requires but little additional weight from the other circumstances, to raise the inference, such as to authorize the sale to be set aside. (2 Litt. 121 ; T. Monroe, 616.) In Coles v. Trecothick, 1 Ves. 234, it is laid down that unless the inadequacy of price is such as shocks the conscience and amounts to conclusive evidence of fraud, it is not a sufficient ground for refusing a specific performance. The rule as laid down in the charge of the Court, and as it is generally expressed, is, that inadequacy of price at a sale made under process of law, is not sufficient, without additional circumstances, to invalidate the sale. (11 Johns. 566 ; 6 Watts, 140 ; 3 Yeates, 405–6.) But in cases where the disproportion is so enormous as in this, but slight additional circumstances will justify the inference that the sale is fraudulent.

The jury, from the evidence, may have inferred that the sale was postponed with the fraudulent design of having the sale made when none but the parties implicated in the fraud were present, at least none intending to bid, and when those who had come with that intention had left the ground. The witness, who was willing to give the six hundred dollars attended at the day of sale to buy the lot, but was informed that the sale had been adjourned, and he left.

There are also other circumstances from which the jury might infer that the sale was not fairly made. We cannot

say that their conclusion was against the evidence, and it is ordered that the judgment be affirmed.

Judgment affirmed.