PLEASANT H. PEARSON V. HENRY HUDSON ET AL.

1. TRUST DEED—FRAUD.—The execution of a deed to secure a debt to a third party, conveying in trust land which at the time was subject to a judgment lien in favor of another, cannot be regarded as fraudulent, with reference to the owner of the judgment.
2. BANKRUPTCY.—The assignee in bankruptcy had the power to sell the interest of the bankrupt in property to which there was an adverse claim, without making the adverse claimant a party; but the sale would be without prejudice to his interests.
3. NOTICE—SHERIFF'S SALE.—The plaintiff in execution who becomes a purchaser at execution sale, is chargeable with notice of the irregularities of the sheriff in making a levy.
4. SHERIFF'S SALE—INADEQUACY OF CONSIDERATION.—A plaintiff in execution purchased, at execution sale, for $10, improved land worth from $500 to $1,000. There was evidence that the defendant in execution was not called on to point out property, and that he owned and had in the county, subject to levy, personal property of large value which was not levied on. The court below, a jury being waived, held that the gross inadequacy of the amount bid, in connection with irregularities of the levy, avoided the sale : *Held*, That there was no error.

APPEAL from Rusk. Tried below before the Hon. A. J. Booty.

Suit by P. H. Pearson against R. B. Flanagan and the other appellees, in trespass to try title, to recover about twelve acres

of land in the town of Henderson, the same being a part of the Starr labor. A jury being waived, judgment was render for R. B. Flanagan and the other appellees, from which Pearson appealed.

On the trial, appellees read in evidence a judgment against J. W. Flanagan for $1,000, a *fieri facias* on that judgment, with levy and sheriff's deed. Pearson bid off the property at $10, which was credited on the judgment. The appellees read in evidence a transcript of proceedings in bankruptcy authorizing an assignee to convey all the interest of J. W. Flanagan in the Starr labor to A. D. Tinsley, trustee, in trust for the minor children of J. W. Flanagan. They also read in evidence a deed from H. C. Hunt, assignee, to Tinsley, made in pursuance of the order in bankruptcy; also a deed from J. W. Flanagan in trust to A. D. Tinsley for the children of J. W. Flanagan, dated April 16, 1868. W. Flanagan testified to the payment of taxes by appellees, and that there was much personal property in Rusk county belonging to J. W. Flanagan at the time of the levy; that he so informed the sheriff; that he owned unimproved land, a steam-mill, cotton, horses, mules, and lumber subject to levy. J. W. Flanagan testified that there was personal property at his residence from the date of levy to sale aggregating in value $4,000 or $5,000, and that he then owned two and one-half leagues of land worth $1 per acre; that the sheriff did not ask him for a levy. Camp, a witness for appellees, testified to the payment of Pearson's judgment on the 6th of May, 1875; that the lot at the date of sale was worth $600, and that an offer had been made to pay Mr. Bagley, Pearson's attorney, the amount bid for the land with interest, which he refused. The amount of the bid, with interest, was formally tendered in open court and deposited with the clerk. In 1868 or 1869 the officer (Hickey) had a *fieri facias* in his hands against J. W. Flanagan, and asked him to point out property for a levy, but did not recollect in what case it was issued; thought the land sued for was worth $1,000. Duncan Preston testified that the land was worth from $500 to $600.

R. M. Wynne thought the land was worth from $500 to $1,000. N. G. Bagley, Esq., testified that the sale was conducted with the usual fairness; that one Wade Turner said he would not buy "anything that old Flanagan had anything to do with, because he would law him all his life-time." The lot of ground sold was improved at the date of sale. N. G. Bagley proclaimed at the sale that the purchaser would procure by his purchase a good title. Webster Flanagan said the land sued for was worth $1,000 at the sale; said he held the land for his father, J. W. Flanagan, till deed was made, then for appellees; think taxes were paid from January, 1871, to March 7, 1872; J. W. Flanagan had property in Rusk county, consisting of land, steam-mill, cotton, horses, &c., subject to execution; do not know that he had cotton at the time of the sale; had large pile of lumber at the mill; had five horses worth $400 each at the time of the levy and sale; J. W. Flanagan was a Senator in Washington, D. C., at the time of levy and sale; said he was called on for a levy, by Lacy, November, 1870, and gave none; told Lacy the debt was paid by bankruptcy, and that J. W. Flanagan had property in the county; that he enjoined the execution as surety, and retained his property that was levied on; did not know that the deed of J. W. Flanagan, his father, was on record; thinks J. W. Flanagan had five to ten mules; did not know that the mules and horses above mentioned were in the deed of trust to Tinsley; they were not turned over to him; the *fieri facias* levied on his property was not the one under which the land was sold; his property was levied on in November, 1876; he was in Austin at the date of levy and sale, and J. W. Flanagan was in Washington, D. C.; the lumber was in Rusk county when he went to Austin, and may have been sold and replaced when he returned.

J. W. Flanagan said that about March, 1871, he owned between 15,000 and 20,000 feet of lumber worth $2 per hundred, two mares worth $550, another worth $500, another worth $180, and two mules worth $150 each; he thinks he had thirty bales of cotton on his place; had 25-horse-power engine;

had a league of wild land worth $1 per acre; don't know that title deeds were on record; the Norris deed was on record not long after it was made; the mill was on his wife's land; the cotton was there on the 4th of March, 1871; no one sold it in his absence; the Norris land was in litigation; it was compromised; don't know that Pearson knew it; the deputy sheriff never asked him for a levy and told him he had a *fieri facias*; he told him it was included in his discharge in bankruptcy, but if his attorney said he was bound, he would pay it; Lacy did not say what execution he had. Camp said he paid the judgment of Pearson against Flanagan recited in the *fieri facias*.

The appellant filed the following assignment of errors, viz.:

1st. The judgment of the court is not supported by the evidence, in this: that the evidence shows that the plaintiff ought to have recovered the land sued for.

2d. Because it shows that the defendant in execution in this case was absent from the county of Rusk and the State of Texas when the execution was issued and levied on the land sued for, in the city of Washington, D. C., and had no agent in Rusk county known to the plaintiff from whom a levy could be demanded, nor did any agent of defendant in execution point out any property on which said execution could be levied. * * *

4th. The judgment of the court is against the law, in that the sheriff's sale was fair and the plaintiff's attorney declared at the sale that the purchaser would get a good title; that there was no irregularity in the levy and sale, in which the plaintiff acted or concurred in; neither was there any fraud, and the conveyance by J. W. Flanagan by deed of trust was void, there being no consideration therefor shown; nor was it proved that the defendants were children of his wife, or that she was dead.

5th. Inadequacy of price alone is not sufficient to avoid a sheriff's sale and deed. * * *

10th. The court erred in sustaining defendant's exceptions,

without giving any reason therefor, to the evidence of Bagley and others, who offered to and would have proved that J. W. Flanagan had the character of being very litigious as a reason why the property sold did not bring more money at the sale.

11th. The court erred in overruling plaintiff's exceptions to deed of trust, assigned to A. D. Tinsley, trustee, and the order of the Federal Court. The court overruled the plaintiff's exception on the ground that plaintiff was no party to the proceeding.

12th. The court decided that inadequacy of price, without any fraud, was sufficient to set aside a sheriff's deed.

13th. The was no evidence on the trial to sustain the judgment of the court, as plaintiff had a judgment lien on the land sued for long before the deed of trust by defendant to A. D. Tinsley, and said deed was without consideration, was made to delay the plaintiff in the collection of his debt, and therefore void.

*N. G. Bagley,* for appellant.

I. When defendant in execution is not in the county and has no known agent, the sheriff may levy on any property of the defendant he can find, and is not required to make a demand; and it will be presumed he did his duty until the contrary appears.

It was proved that J. W. Flanagan was not in the county of Rusk or the State of Texas at the time of the sale of the land in controversy, and that he had no agent. (Ross *v.* Lister, 14 Tex., 473; Kendrick *v.* Rice, 16 Tex., 260; Cook *v.* De La Garza, 13 Tex., 431; Bryan *v.* Bridge, 6 Tex., 142.)

II. As defendant admitted that a demand had been made on J. W. Flanagan by the sheriff on a previous execution on the same judgment in 1868 or 1869, and the fact was proven that another demand had been made and he refused to give any levy, saying all was his wife's and not subject to levy and sale, he waived all right he had to point out property afterwards on the same or any future execution on the same judgment. (16

Tex., 576; 33 Tex., 178; 1 Tex., 529; 9 Tex., 293; Freem. on Ex., 279 *et seq.;* 2 Bouv. Law Dic., 648; Rorer on Jud. Sales, 459.)

III. A purchaser at a sheriff's sale of land under a valid judgment and execution, notwithstanding irregularities, unless caused by him, gets a good title. Appellants fulfilled these requirements. (26 Tex., 635; Rorer on Jud. Sales, 290.)

IV. Inadequacy of price alone is not sufficient to set aside a sheriff's sale and deed. It is in proof that the land sold for $10, when two witnesses said it was worth $1,000, and three others that it was worth $500. It was also proven that the sale was fair and free from fraud. (26 Tex., 629; 27 Tex., 541; 48 Tex., 324.)

V. The sheriff is presumed to have done all the law required of him in the levy and sale of the land; and it is not clearly proven that J. W. Flanagan had any property subject to levy and sale, except that which was levied on. He said he thinks he had thirty bales of cotton; large amount of lumber at the mill; had $1,000 or $1,500 worth of horses and mules; a saw-mill worth $4,000. (Cravens *v.* Wilson, 48 Tex., 324.)

VI. If the sheriff failed to do his duty and made a levy on the property contrary to law, the parties injured had their remedy against him, his heirs, and his sureties on his bond. (5 Tex., 290; Freem. on Ex., 229.) The court should have stated the conclusion of law separate from the facts, as requested. (Acts of the Legislature of 1879, p. 116.)

VII. The payment of a judgment after a levy and sale, and the offer to refund the money bid for the land, does not affect the sale. It was proven that Camp paid the judgment, $1,500, and offered to pay the plaintiff's attorney the amount bid for the land. The plaintiff excepted to the proof as irrelevant. The above proposition is self-evident, and needs no authority to sustain it.

VIII. Any act which was calculated to prevent the sale of the land for its value should have been admitted. (Baker *v.* Clepper, 26 Tex., 634.)

IX. The plaintiff could not be affected by the proceeding in bankruptcy to which he was not a party.

X. The plaintiff's judgment constituted a lien on the land before the deed to defendants, and the plaintiff's related back to the date of this judgment, May 7, 1869. (Paschal's Dig., art. 7095; 34 Tex., 347; 35 Tex., 209; 28 Tex., 759.)

XI. The inadequacy of price is not sufficient, of itself, to set aside a sheriff's sale. There was no fraud proven, or any acts or circumstances by which fraud could be inferred. (26 Tex., 629; 25 Tex., 388, 634; 27 Tex., 677.)

XII. The deed to defendants by Flanagan was made without consideration, was void as to plaintiff, who was a creditor at the time the deed was made, having a judgment lien on the land. Judgment in favor of appellant against Flanagan was rendered May 7, 1867, and the deed of Flanagan to A. D. Tinsley bears date October 1, 1868. (Paschal's Dig., art. 3876; 10 Tex., 393; 46 Tex., 183; Flanagan *v.* Pearson, 42 Tex., 1.)

XIII. The appellees cannot plead ignorance of the fraudulent intention of J. W. Flanagan when they might have known it by reasonable diligence. (25 Tex. Supp., 294; 22 Tex., 672; 15 Tex., 188; 10 Tex., 393; 19 Tex., 259; 16 Tex., 43; 26 Tex., 561.)

XIV. The purpose of the grantor being shown, the grantee must rebut the presumption of fraud. (27 Tex., 479.)

XV. When a deed is alleged to be fraudulent, and made to hinder and delay creditors, then the preferred creditor must disprove the fraud by showing clearly the existence of the indebtedness. It was not proven that J. W. Flanagan owed appellees a dollar, or that there was any community property belonging to them as the heirs of Elizabeth Flanagan, or that she was their mother. (10 Tex., 393; 28 Tex., 780; 27 Tex., 407; 22 Tex., 672; 1 Tex., 178, 191; 25 Tex. Supp., 294; 15 Tex., 188.)

XVI. The deed to appellees being void, neither they nor J. W. Flanagan could complain of the inadequacy of price,

they having no interest as against appellant. (29 Tex., 225; 22 Tex., 707; 1 Tex., 154; 14 Tex., 583; 42 Tex., 18.)

XVII. Appellees cannot hold by limitation. They hold under J. W. Flanagan. They did not prove title from the State, and the deed was void. (Paschal's Dig., art. 4622; 23 Tex., 30; 27 Tex., 248; 26 Tex., 730.)

*James H. Jones* and *Morris & Gould*, for appellees.

BONNER, ASSOCIATE JUSTICE.—On a former appeal in this case (50 Tex., 383) it was decided that James W. Flanagan, the defendant in execution, inasmuch as he had parted with his title to the property in controversy to appellees, R. B. Flanagan *et al.*, before the levy of the execution, was not a proper party, and he was accordingly dismissed.

The present appellees, R. B. Flanagan *et al.*, and who were the real defendants below and in possession, were held to be proper parties defendant, and as such were permitted to contest the validity of the execution sale.

In these two particulars the suit now before the court, in which appellant Pearson is the plaintiff, differs from that recently decided by us, in which James W. Flanagan was plaintiff and appellant Pearson was the defendant in possession.

They further differ in the following points: That the last-named case was tried before a jury and reversed for error in the charge; this was submitted to the court without the intervention of a jury. In that case Pearson set up the statute of limitations and laches on the part of Flanagan, defendant in execution, in the delay in the institution of proceedings to set aside the sale; this he fails to do in the present suit, but the appellees, R. B. Flanagan *et al.*, plead the statute of limitations of three and five years. In that case the evidence shows that the title of James W. Flanagan to the property there in controversy was not recorded at the date of the levy and sale, and it was held that this, under the circumstances of that case, may have so influenced the price that it should have been submitted

to the jury; in this case the defendants, R. B. Flanagan *et al.*, were in possession by their tenants and had their title recorded. In this suit there are the additional issues that the original trust deed to A. D. Tinsley from James Flanagan for the use and benefit of his minor children, R. B. Flanagan *et al.*, was void, on the ground that it was made to defraud Pearson, a judgment creditor; and that the deed from H. C. Hunt, assignee of the bankrupt estate of James W. Flanagan, to Tinsley, as such trustee, made in satisfaction of said trust deed, under the order of the United States District Court, was void, because Pearson, being a judgment-lien creditor, was not made a party to the proceedings.

In other respects the material issues and evidence in the two cases are essentially the same.

James W. Flanagan had the right to convey the land subject to the judgment lien of Pearson, and, in this view of the case, the trust deed to Tinsley could not be held to have defrauded Pearson of his lien on the land.

The United States District Court had, under the bankrupt act and practice, jurisdiction to make the order that Hunt, as assignee, make deed to Tinsley, as trustee, to the land in controversy, in part satisfaction of the alleged indebtedness intended to be secured thereby. It was held in a recent case decided by this court, (Pope's Administrators *v.* Davenport, *supra*, 206,) that the assignee had the power to sell the interest of the bankrupt in property to which there was an adverse claim, without making the adverse claimant a party, but without prejudice to his interest.

These deeds, then, did not affect the right of Pearson to have this land sold to satisfy his judgment lien, and the question returns to the validity of this execution sale.

The value of the land at the time of this sale was variously estimated from $500 to $1,000, and it was bid off by Pearson, the plaintiff in execution, for the sum of $10, a price grossly inadequate.

It is contended that this fact, in connection with the irregu-

larity in the levy, being made upon improved lands, when it appears from the evidence that the defendant in execution had personal property sufficient to have satisfied the same, should avoid the sale. (Paschal's Dig., art. 3775.)

It is said in the case of Pearson *v.* Flanagan, *supra,* 281, that the weight of authority, including that of this court, is, that mere inadequacy of price, of itself, is not sufficient to set aside a sheriff's sale otherwise valid, but that gross inadequacy of price, in connection with slight additional facts showing fraud, irregularity, or other circumstances calculated to prevent the property from bringing something like its reasonable value, might avoid the sale. (Freem. on Ex., sec. 309; Chamblee *v.* Tarbox, 27 Tex., 139; Allen *v.* Stephanus, 18 Tex., 658.)

The record here does not show, as it did in that case, that James W. Flanagan, defendant in execution, or appellees, R. B. Flanagan *et al.,* were guilty of acts or omissions such as were held, as regards James W. Flanagan, the defendant in execution, should have been submitted to the jury as circumstances to explain this inadequacy of price. The only thing with which R. B. Flanagan *et al.* are chargeable as tending to depreciate the price, is, that they are the beneficiaries in the alleged fraudulent trust deed to Tinsley. This deed was not made to them direct, being minors, but to Tinsley, as trustee, for their use and benefit. Whether it was fraudulent or not, was one of the issues in the case. The United States District Court acted upon it as though made in good faith. That it was thus made, seems virtually to have been decided by the court below; and the question of fraud being one peculiarly for the jury, or for the court when a jury is waived, we cannot say— and particularly in view of the fact that the judgment lien was not affected by the deed—that the weight of evidence was so greatly against the good faith of the transaction, that the judgment should be reversed on this ground. (Briscoe *v.* Bronaugh, 1 Tex., 340.)

Pearson, the plaintiff in execution, is chargeable with notice of the irregularities of the sheriff in making a levy, and al-

though a stranger might not be bound by them, he, being the purchaser, would be.   (Freem. on Ex., sec. 340.)

The court below having held, under the evidence, that the irregularity of the levy, in connection with the grossly inadequate price for which the land sold, was sufficient to avoid the sale, we do not think, in the light of previous adjudications, that, as between the parties now before the court and the issues presented, there was error in the judgment for which we should reverse it.   The same is accordingly affirmed. (Taul *v.* Wright, 45 Tex., 388; Freem. on Ex., sec. 388.)

AFFIRMED.

[Opinion delivered December 9, 1879.]