# W. T. ALLEN v. EDMOND PIERSON.

## (Case No. 1607.)

1. SHERIFF'S SALE — INADEQUACY OF CONSIDERATION.— Mere irregularity in making a judicial sale, when taken in connection with gross inadequacy of consideration, will not alone, as matter of law, be held a sufficient ground for vacating such sale, in the absence of facts showing that the irregularity conduced to the inadequacy of the sum bid.

2. PURCHASER.— A purchaser at sheriff's sale, who goes into possession of the land purchased ignorant of any irregularity that would vitiate the sale, and who in good faith goes upon the land and makes permanent and valuable improvements, ignorant of any design on the part of the judgment debtor to avoid the sale, is entitled to be restored to his former *status* by a restoration of purchase money, and compensation for his improvements before eviction.

APPEAL from Falls. Tried below before the Hon. H. D. Prendergast, special judge.

Suit by Edmond Pierson to recover two hundred acres of land and to vacate an execution sale made March 4, 1879, by virtue of an execution issued from justice court precinct No. 1, Falls county, on a judgment recovered by appellant against him on the 10th of December, 1877, for $89.16 and costs. The execution on which the sale occurred was issued the 4th of February, 1879, for $51.10, a balance of the judgment. At the sale Allen became the purchaser for $61.

The causes on which the plaintiff relied for setting aside the sale were: That the land was cultivated and improved; that he had in the county personal property and unimproved land much more than sufficient to pay the execution, and that he was not called on by the officer to point out property with which to satisfy the execution; that the levy and sale were excessive and fraudulent, the land being at the time worth $2,000; and that he did not know of the execution levy or sale, until after sale.

The appellant answered: That on the 20th January, and again the 27th of March, 1878, executions were issued on the judgment, and another execution was issued on 12th of December, 1878; that with this writ in his hands the officer on two or three different occasions demanded a levy, notifying the plaintiff as to the time when the writ would be returnable; that the plaintiff declined to point out property, saying he would pay the execution before it was returnable, and the plaintiff failing to pay, and there not being time in which to make the advertisement and sale, he on 4th of February, 1879, returned the execution, when another was issued, by virtue of which

the land was sold. He denied that the land was cultivated land, and alleged that neither he nor the officer had any knowledge that the appellee had personal property or uncultivated lands. He alleged that he purchased in good faith, made valuable improvements, which he set up, and claimed the value of them if the plaintiff should recover.

Verdict and judgment for plaintiff for the land and $90 rents, $30 of which was remitted.

The errors relied upon for a reversal were: 1st. The court erred in its charge to the jury. 2d. The court erred in refusing the charge asked by appellant.

The specific grounds upon which each of these objections proceeds are indicated in the opinion.

*Goodrich & Clarkson*, for appellant, cited: Howard v. North, 5 Tex., 305; Sadler v. Anderson, 17 Tex., 256; Cox v. Nelson, 1 T. B. Mon., 94; 15 Am. Dec., 89; Jackson v. Young, 5 Cowen, 269; Bailey v. White, 13 Tex., 115; Burdett v. Silsbee, 15 Tex., 620.

*S. B. Easley* and *Anderson & Flint*, for appellee, cited: Pearson v. Flanagan, 52 Tex., 266, and Pearson v. Hudson, 52 Tex., 352.

WATTS, J. COM. APP.— It seems to be settled by the weight of authority that mere inadequacy of price, unattended by fraud or irregularities conducing to the same, will not authorize the annulling of a sheriff's sale. True, in Taul v. Wright, 45 Tex., 394, it is said, "though it may be impossible to determine the precise limit at which mere inadequacy of price alone will authorize the setting aside a judicial sale, still it cannot be denied that there may be cases in which the price paid is so utterly insignificant and shockingly disproportionate to the value of the property that a court of equity cannot regard it as in conscience any consideration whatever; and the mere fact of attempting to hold the property so purchased will be held conclusive evidence of fraud." But in Pearson v. Flanagan, 52 Tex., 280, it is said: "The weight of authority, including that of this court, is, that mere inadequacy of price of itself is not sufficient to set aside a sheriff's sale otherwise valid." This is also approved in Pearson v. Hudson, 52 Tex., 361. See, also, Chamblee v. Tarbox, 27 Tex., 139; Allen v. Stephanes, 18 Tex., 658.

However, these authorities all concur that where the price is grossly inadequate, slight additional facts showing fraud, irregularity, or other circumstances calculated to prevent the property

from bringing something like its reasonable value, might be sufficient to avoid the sale.

It has ever been the policy of the law to sustain sheriffs' sales when fairly made. This is beneficial to both creditor and debtor. Any other policy would result in preventing persons from purchasing property at such sales and paying anything like a fair consideration for the same, and would lead generally to a sacrifice of all property sold under judicial process.

It is claimed in this case that the property sold for a grossly inadequate consideration, and the jury found this to be true. The value of the property was, by the several witnesses, placed at from $400 to $2,000, while the consideration paid was $61. In law the term gross inadequacy of price is used to designate such a consideration as no sane man would accept, and no fair-minded person would offer, for the property. While there is nothing in the record indicating the amount at which the jury fixed the value of the land, the finding that the consideration paid was grossly inadequate was sustained by the evidence, and that is sufficient for the purposes of this case. It is also asserted that certain irregularities attended the levy and sale which entitled the appellee to have the same annulled. These are that the officer failed to demand a levy of appellee so as to give him an opportunity to point out property, but that the writ was levied upon lands in cultivation, and that the same were sold without the knowledge of appellee. And at that time he owned personal property and wild lands situated in the county, either of sufficient value to more than pay the debt.

It is settled that the statute which directs how a levy shall be made, where the property is not pointed out by the defendant in the writ, is directory. And while a failure to comply with the statute might be, when presented in a proper case, sufficient ground for vacating the levy or holding the officer bound for the damages resulting therefrom, still a sale made in pursuance of such a levy would not for that reason be void. But such non-compliance with the statute might afford sufficient ground, when taken in connection with gross inadequacy of price, for annulling the sale. Pearson v. Flanagan and Pearson v. Hudson, *supra.*

Here however, the question arising out of the record is this: Were the irregularities complained of sufficient, when considered in connection with the gross inadequacy of consideration, to authorize a decree annulling the sale, whether such irregularities did or not conduce to that inadequacy of consideration?

The court in effect charged the jury that if the consideration paid

was grossly inadequate, then if the appellee owned personal property and wild land as claimed, and that he did not have an opportunity to point them out for levy, then this would entitle him to a verdict and decree annulling the sale.

In and by the charge the court assumed that the failure of the officer to demand a levy, etc., necessarily conduced to the inadequacy of the consideration paid for the land. To that proposition we cannot yield assent. If, by reason of the failure to demand a levy, etc., appellee's land was sold without his knowledge, and this failure of the officer, as a matter of fact, in any degree conduced to the inadequacy of consideration, it would entitle him to a decree vacating the sale. But under our system it is a question of fact to be determined from the evidence whether or not the irregularity had any influence upon the consideration for which the property sold. It is not a matter of law to be assumed by the court.

In jurisdictions where law and equity are kept distinct, and administered in separate tribunals, in cases of this character of equitable cognizance, the chancellor is the judge of the facts as well as the rules of law and principles of equity to be applied. In those courts it is not unfrequently remarked that where the disproportion between the consideration paid and the value of the property is enormous, that the court will seize upon slight irregularities as sufficient cause for annulling the sale; and the more gross the inadequacy of consideration, the slighter the irregularity requisite for avoiding the sale.

But it is apprehended that under no system would a mere irregularity, when taken in connection with gross inadequacy of consideration, be held sufficient ground for vacating a judicial sale, unless that irregularity in some way conduced to that inadequacy. Besides, our standard of values is more liable to fluctuation and change than those of older countries. Then, as heretofore remarked, the court should have submitted to the jury the further fact as to whether or not the irregularities complained of, if they existed, did in any way conduce to the gross inadequacy of consideration paid for the land. In this particular there was an error committed by the court.

Suits like this are of equitable cognizance, and must be determined in accordance with those principles of equity and natural justice administered by chancery courts.

One of the cardinal principles lying at the foundation of that system is that "he who seeks equity must do equity." In applying that wholesome rule courts generally, in vacating even void judicial sales,

have required that the purchase price paid should be refunded to the purchaser.

But here the appellant claims that under his purchase he took possession of the land, and without knowing anything about any suit or intended suit attacking the sale, and without any actual knowledge of any irregularities upon the part of the officer in making the levy, etc., that he in good faith placed permanent and valuable improvements upon the property, which greatly enhances its value. And for the value of which, in the event the sale was annulled, he prayed judgment against the appellee.

If, as claimed by the appellant, he, in good faith, placed valuable and permanent improvements upon the land, and being in fact ignorant of the irregularities of the officer in making the levy, and not knowing anything about any intended suit to contest the sale, then undoubtedly a court of equity would refuse to annul the sale, except upon the terms that the value of such improvements was paid or secured to the appellant.

In Patrick v. Roach, 21 Tex., 251, it was held that where a rescission of a sale is sought, the right to the value of improvements and the measure of its allowance depend upon the principles of equity, and not on the provisions of the statute with reference to the action of trespass to try title.

In other words, a court of equity would not permit the appellee to stand by, and thus allow the appellant to improve the land, under the honest belief that he was the true owner and not knowing anything of any intended suit contesting his right, and then recover the land with the improvements, without making compensation for the improvements thus placed upon it. To permit him to do so under such circumstances would be inequitable and unjust, for by his non-action and silence, when good faith required him to speak and act promptly, he has misled an innocent party to his prejudice, and he will not therefore be permitted to convert his own wrong into advantage and profit.

But it is claimed that the most or all of the improvements were placed upon the land after the petition was filed in this case, and hence appellant was chargeable with notice by reason of a *lis pendens*. It appears that the petition was filed in July, 1879, but that no citation was issued or served until August, 1880. There is some doubt in this state as to what constitutes *lis pendens*. In the case of The Board v. T. & P. R'y Co., 46 Tex., 327, it is said: "And it may be that public policy, from which this rule springs, should give it effect with us from the filing of the suit, if due and reasonable

diligence in procuring service and prosecuting the suit is shown." The correctness of that intimation may well be doubted, for the general practice in chancery courts is that the bill must be filed before the subpœna is issued, and then it is generally held that the suit is not commenced until service is had, so as to constitute *lis pendens*. Wade on Notice, § 348 and authorities cited.

But however this may be, no reasonable diligence is shown in procuring service and prosecuting the suit. And the only explanation given for the delay is found in the statement of the clerk to the effect that it was his custom not to issue process until a cost bond had been presented and approved. True, there is some evidence that one of the attorneys for the appellee applied to appellant to accept service of the petition, but at what time that occurred is not made to appear. Of course, after he was requested to accept service of the petition, appellant would be held to have actual knowledge of the suit. But it admits of doubt whether anything short of actual knowledge upon the part of appellant that his right to the land was to be contested would prevent a recovery on his part for the value of the improvements he in good faith placed upon the land. For a court of equity, in dealing with the subject, would strip it of all technicality, and go directly to the real and substantial justice of the case; and will, in decreeing that the sale be vacated, so far as substantial justice requires, restore the parties as near as may be done to their former *status*.

While the charge asked and refused upon that issue did not embody the correct rule, still it was sufficient to call the attention of the court to the omission in this particular in the general charge, and that the issue ought to be submitted to the jury by appropriate instructions.

On account of the errors indicated we conclude and report that the judgment ought to be reversed and the cause remanded.

.REVERSED AND REMANDED.

[Opinion adopted January 25, 1884.]